## WILBUR S. JENKINS, Respondent, v. WILLIAM H. CLOPTON, Appellant.

### St. Louis Court of Appeals, July 20, 1909.

1. **MONEY HAD AND RECEIVED: Express Agreement: Quantum Meruit: Plaintiff Entitled to Recover Although Express Agreement not Proved.** In an action for money had and received, brought by the assignor of several persons for whom defendant, as attorney, had prosecuted a suit and collected the amount of the judgment therein rendered, defendant claimed he was entitled to retain fifty per cent. of said amount for his compensation, while plaintiff claimed he was entitled to retain ten per cent. only, by reason of a special contract which limited his compensation to that amount. *Held,* that, although it was not shown that each individual, who assigned his claim to plaintiff, had a separate contract with defendant by which his compensation was fixed at ten per cent., plaintiff was, nevertheless, entitled to have such claims submitted to the jury. It appearing that defendant had obtained moneys of said assignors and retained the same against their will, after demand,

it was immaterial so far as the question of the reference of such claims to jury was concerned, whether defendant's compensation should be ten per cent. or fifty per cent.

2. ———: ———: ———: ———: **Question for Jury.** In such case, it is for the jury to determine the question of fact as to what portion of the moneys the respective parties should have.

3. ———: ———: ———: ———: **Instructions.** In an action for money had and received, brought by the assignor of several persons for whom defendant, as attorney, had prosecuted a suit and collected the amount of the judgment therein rendered, where defendant claims he was entitled to retain fifty per cent. of said amount for his compensation, while plaintiff claimed he was entitled to retain ten per cent. only, by reason of a special contract which limited his compensation to that amount, an instruction given for plaintiff, which permitted a recovery against defendant, if the jury found he agreed to perform the services on a ten per cent. basis (without indicating with or for whom he made such contract), and that he made the collection and retained the proceeds of the same, is not subject to criticism, on the ground it does not indicate with or for whom he agreed to perform the services for ten per cent. If such contract was made, it is immaterial, in this form of action, with whom it was made, the suit not being for breach of contract, but predicated upon the right of plaintiff to moneys he asserts defendant wrongfully withholds from him.

4. ———: **When Action Lies.** An action for money had and received will lie in lieu of an action on contract, whenever defendant has received money which belongs to plaintiff, and which natural justice and equity require him to pay over.

5. **INSTRUCTIONS: Immaterial to Issues: Invited by Party Complaining.** Although facts hypothesized in an instruction given for plaintiff are immaterial to the issues, yet if defendant is responsible for such matter being injected into the case, he will not be permitted to complain of it, even though it tended to confuse the issues.

6. ———: **Non-direction.** It is not incumbent on the court to instruct the jury from defendant's standpoint, unless properly requested so to do.

7. ———: **Instruction Covering Case and Omitting Defense Covered by Other Instructions not Error.** An instruction which covers the case on plaintiff's theory, but ignores one of the defenses, is not erroneous, where such defense is submitted to the jury in another instruction given for plaintiff.

Jenkins v. Clopton.

8. **PLEADINGS: Contracts: Recovery Confined to Cause of Action Pleaded.** In an action on a special contract, a recovery may be had on the contract pleaded only, and not a different cause of action.

9. **INSTRUCTIONS: Submitting 'Case on Different Theory Than Petition Counts On: Invited by Party Complaining.** Even though the issue submitted by an instruction is not within the allegations of the petition, if it is within the issues defined in the pleadings, as defendant's answer tenders it, defendant will not be heard to complain.

10. ——: **Ignoring Facts.** An instruction which ignores facts in evidence is properly refused.

11. ——: **Refusal Covered by Others.** The refusal of an instruction which is abstractly correct is not error, if the questions it submits are covered by others given.

12. **APPELLATE PRACTICE: Error not Affecting Merits.** Under section 865, Revised Statutes 1899, unless error against appellant materially affecting the merits appears, the judgment should not be reversed.

13. **EVIDENCE: Payment: Sending Letters Through Mail.** While the sending of money orders through the mail may be *prima facie* evidence that they were received, it is not evidence of that fact nor of payment where the letter containing them was improperly addressed.

14. **INSTRUCTIONS: Ignoring Facts.** Instructions requested for defendant, which ignored a fact essential to a finding for him, were properly refused.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*O'Neill Ryan* for appellant.

The first instruction given for plaintiff was erroneous in these particulars: (a) It made defendant liable if he agreed to perform the services on a ten per cent basis, without indicating with whom or for whom he agreed to perform. (b) It interjected a misleading and inaccurate reference to the Strode case thus beclouding the real issue and confusing the jury. (c) It

undertook to cover the entire case on the plaintiff's theory of special contract, and entirely ignored the only defense, to-wit, quantum meruit, and this defense was not covered by any other instruction. Hernheide v. Transit Co., 104 Mo. 323; Borden v. Folk, 97 Mo. App. 570; Carroll v. Railroad, 60 Mo. App. 465; Maack v. Schneider, 57 Mo. App. 431. The second instruction given for plaintiff, failed to specify by whom defendant was employed and with whom he agreed to a ten per cent fee, and referred to his duty to notify the "person or persons so employing him," leaving the jury to speculate on these points. The third instruction given for plaintiff is erroneous in the particulars pointed out as to the first instruction. It is fatally erroneous in this: It predicated plaintiff's right to recover not on the special ten per cent. contract pleaded, but on a contract with defendant to render legal service with "no agreement as to his charge or fee," and allowed the plaintiff to recover as "damages" such sums as defendant collected, and still retains less what his services were reasonably worth." It made a clear departure and allowed plaintiff to recover upon an entirely different cause of action from that stated in his petition. Milliken v. Thyson Com. Co., 100 S. W. 604; Heinzle v. Railway, 182 Mo. 528; Koenig v. Railroad, 173 Mo. 628; Clemens v. Yeates, 69 Mo. 623; Eyerman v. Mt. Sinai Association, 61 Mo. 489; Caffrey v. Mining Co., 95 Mo. App. 174-180; Squire v. Brewing Co., 90 Mo. App. 462-6-7; Henderson v. Davis, 74 Mo. App. 1-4; Glaves v. Morrow, 69 Mo. App. 382; Jacquin v. Cable Co., 57 Mo. App. 320-331; Whipple v. B. & L. Assn., 55 Mo. App. 554; Gas Light Co. v. Mercer, 48 Mo. App. 644-650; Wright v. Fonda, 44 Mo. App. 634-642; Lewis v. Slack, 27 Mo. App. 119-129. The instruction given for plaintiff *falsus in uno,* etc., was not justified in this case. and to give it was an abuse of discretion. Hartpence v. Rogers, 143 Mo. 634; Henry v. Railroad, 109 Mo. 495; Reed v. Mexico, 101 Mo. App. 162. The instruction of-

fered as to each count that the jury must find a ten per cent agreement with defendant before there could be a verdict against him, and that the burden of proving such an agreement rested on plaintiff, clearly should have been given. It sharply defined the vital point necessary to plaintiff's recovery and defendant was entitled to have it so presented, and it was not covered by any other instruction given. Standfield v. Loan Assn., 53 Mo. App. 595. The instruction offered by defendant that if he rendered services, collected monies, and paid them over less fifty per cent fee, and that it was a reasonable charge, then the verdict must be for defendant, presented clearly and correctly defendant's sole defense, and its refusal was manifestly prejudicial error. Warder v. Seitz, 157 Mo. 149.

*Geo. D. Harris* and *L. F. Ottofy* for respondent.

Proof of the allegation in the petition that appellant agreed to secure distribution of the fund held in trust for the heirs of William Wise for a commission of ten per cent was not essential to respondent's right of recovery. Crigler v. Duncan, 121 Mo. App. 381. Instructions must be considered together, and if they present the issues to the jury fairly, there is no error. Blaydes v. Adams, 35 Mo. App. 526; Wallich v. Morgan, 39 Mo. App. 469; Liese v. Meyer, 143 Mo. 547. The appellant offered seventeen instructions. The court was justified in refusing all for the reason that they were too numerous. Crawshaw v. Summer, 56 Mo. 517; Coe v. Griggs, 76 Mo. 619; Renshaw v. Insurance Co., 33 Mo. App. 394; Hannibal v. Richards, 35 Mo. App. 15; McAllister v. Barnes, 35 Mo. App. 668. Appellant cannot complain of the reference in the instructions to the suit against the Lincoln Trust Company and the McBurneys, for this was made an issue by his answer; he testified in reference to it, over the objection of respondent, and cross-examined witnesses who testified in relation thereto. Furniture Co. v. Crawford, 127 Mo. 356;

Dice v. Hamilton, 178 Mo. 81; Realty Co. v. Moynihan, 179 Mo. 629. The instruction *falsus in uno,* etc., was justified by the conflict in the testimony. Walker v. Railway, 106 Mo. App. 321; Cameron v. Hart, 57 Mo. App. 142; Britton v. St. Louis, 120 Mo. 437.

NORTONI, J.—This is a suit for money had and received. Plaintiff recovered and defendant appeals. The petition contains thirteen counts, one of which was dismissed. The case was referred to the jury on the other twelve. The first count of the petition asserts the claim of plaintiff in his own right. The other eleven counts assert the claims of as many separate individual heirs to the fund involved, which claims have been duly assigned to the present plaintiff. The defendant is an attorney at law, practicing his profession in the city of St. Louis, and the controversy arises from his employment by a number of persons to collect their several interests in a certain trust fund in the possession of the St. Louis Union Trust Company as trustee. The theory of the plaintiff and his assigns who employed defendant for the purpose of collecting their interests is, that they were to pay him ten per cent of the amount recovered for his services, while the theory of the defendant is, that he was employed to perform the services without any special contract for compensation and that therefore he should receive reasonable compensation for the services rendered.

It appears that by the provisions of his last will, probated in the probate court of the city and county of St. Louis, in the year 1861, William Wise, deceased, devised to one French Reyburn, the sum of $6000 in trust for the following purposes, to-wit: First, to pay to his sister, Mary Ann Wise, during her natural life, the interest and profits of such sum of $6000; and second, at the death of Mary Ann Wise, said sum to be equally divided between the brothers and sisters of the said William Wise, named in his will, and the children

of any deceased brother or sister; the child or children of any deceased brother or sister to take the proportion or share that their father or mother would be entitled to if living. The trustee accepted the appointment and acted thereunder for a considerable period, when he resigned. Under a decree of the circuit court, another trustee was duly appointed to execute the trust and qualified. In due time, this trustee became insolvent, failed in business, and litigation followed against him and his bondsmen to the end of preserving the trust fund intact. Through the failure of the trustee and the insolvency of his bond, together with the litigation entailed, the trust fund was diminished to something like $1000. About 1900, Mary Ann Wise, to the use of whom the trust was originally created, departed this life. The fund, in the meantime, through subsequent appointments in the execution of the trust, had found its way into the possession of the St. Louis Union Trust Company and amounted to about $1,100. A short time after the death of Mary Ann Wise, the defendant received a communication from J. F. Wise of Columbus, Georgia, a nephew of the original donor, William Wise, calling his attention to the matter and requesting him for some information touching the rights of the heirs at law who would succeed to the fund at the death of his aunt, Mary Ann Wise. The defendant answered the communication under date of September 25, 1909. In this letter he informed J. F. Wise of the essential facts pertaining to the creation of the trust, the subsequent resignation of the trustee, the appointment of his successor, his subsequent failure, the litigation which ensued, and that there was recovered out of the same and preserved, about $1,000 which, with interest, amounted at that time (September 25, 1900) to $1,169.10; and that this fund should rightfully be distributed among the devisees of William Wise, the original donor. The defendant further suggested a general outline of the proceedings necessary to establish the rights of the

Jenkins v. Clopton.

several heirs or devisees to the fund, and concluded the letter by saying: "I will be glad to serve you and your relatives in this matter." J. F. Wise wrote defendant a second time on October 9, 1900. This letter the defendant answered under date of October 25, 1900, in which he more fully detailed the history of the trust fund and the vicissitudes which attended it, the litigation, etc., and said there was now available the $1,000 and some accumulated interest for distribution. The defendant concluded the letter as follows: "But there is no reason why you should not collect the $1,000 now in the trust company. Write to your relatives and get them to join you in applying to the court for distribution of the $1,000. I will take pleasure in representing them." On January 23, 1901, the defendant again wrote to J. F. Wise to the effect that the trust company "would require strict proof of heirship. . . . Write to all of the heirs you know and ask them to cooperate with you, because the expense of proving heirship will be too expensive for any one individual, as the interests are so small." Thereafter, on February 16, 1901, Joseph F. Wise, on behalf of himself, his brother, George L. Wise, and his sister, Mary I. Wise, wrote the defendant inquiring what his charges would be for the necessary services rendered to them touching the matter of their interests. On February 18, 1901, the defendant replied to this communication as follows: "I received your favor of the 16th inst. to-day. My charge will be ten per cent. of the amount; evidence will have to be taken to prove heirship. I will be very glad to serve you and your relatives, and will take the matter up at once after hearing from you." This letter of defendant to Joseph F. Wise was forwarded by Mr. Wise to his sister, Mrs. Mary A. Black, at New Castle, Ohio, and it seems, on the basis of the proposition therein contained, she consented to the employment. Mr. Joseph F. Wise instructed the defendant on behalf of himself

141 App.—6

and his brother and sister residing at Columbus, Georgia, to proceed and represent their interests in the matter. While it does not appear that Joseph Wise represented any person other than himself, his brother and sister, it does appear that several heirs residing in different parts of the country, had more or less correspondence touching the matter of the fund and others were informed that defendant was looking after the interests of those mentioned. It seems that several of the heirs wrote to defendant voluntarily about the matter and he wrote to others informing them of their interests and that he was employed in the matter. The purport of this correspondence was to the effect that defendant suggested the several heirs might come into the case, or at least that they should consent to the use of their names in the matter. In all there were about forty interested parties. It does not appear that defendant made any proposition directly to represent any of these parties other than Joseph Wise and his brother and sister residing at Columbus, Georgia, on a ten per cent. basis. No such fact appears in proof, unless his requests for Joseph F. Wise to communicate with his relatives and the statement that defendant would be pleased to serve him and his relatives, would authorize an inference to that effect. There is proof in the record that others of the heirs knew of the ten per cent proposition made to Joseph F. Wise. In fact, Joseph F. Wise sent the defendant's letter to one sister, Mrs. Black, residing in Ohio. Several of those interested notified the defendant to represent their interest as well. William Wise, of Medway, Ohio, testified that, representing himself and his sister, Mrs. Black, he wrote the defendant to the effect that he and Mrs. Black would come in on the ten per cent basis proposed to Joseph F. Wise, and requested the defendant to represent them in the matter. This witness said: "I had no agreement other than that proposed by him (defendant) in his letter to J. F. Wise, where he says his charges will be ten per cent.

and that he would be glad to serve J. F. Wise and his relatives, etc. It appears, too this witness obtained a list of the heirs forty or more in number, and furnished the same to the defendant for use in the case. Plaintiff Jenkins testified that his uncle, Mr. Sturgeon, an interested party, informed him of defendant's proposition to J. F. Wise to represent him and his relatives on a ten per cent. basis and that he, Sturgeon, also contracted with defendant to that effect. The witness said: "I told him that was our understanding of the contract and that the contract was satisfactory to us." This testimony in the main was, of course, hearsay. It was admitted, however, and no exception preserved thereto. About February, 1902, the defendant filed a bill in the circuit court of St. Louis county in which he set out the facts touching the trust fund and the death of Mary A. Wise, in whose favor the trust was originally declared, representing that the petitioner in that case, William Wise, of Ohio, was an heir and prayed the court to order proof of heirship to be made to the end that the fund should be distributed. The court declined to grant the relief upon the bill thus filed and dismissed the same. Plaintiff's bill having been dismissed by the court, the next move in the matter was had in August of that year. On August 29, 1902, Messrs. McNeill & Levy, attorneys at law at Columbus, Georgia, wrote the defendant representing Joseph F. Wise and his brother and sister there, inquiring about the status of the matter. This is a long letter and reviews the facts pertaining to the trust, etc., as detailed by the Wise heirs, whom counsel represented at Columbus, Georgia. It is stated therein that the Wise heirs residing at Columbus, Georgia, requested their counsel there to co-operate with the defendant in making such proofs as were necessary to obtain their share of the fund. This letter concludes as follows: "If the fund is only $1,000 or $1,100 there will hardly be enough coming to either branch of the family to make it very profitable to the attorneys, but

it may be that a number of the persons entitled will unite, in which case there would be a fund sufficient to authorize a reasonable compensation to the attorneys employed by them. Please let me hear from you at your earliest convenience, and oblige." Defendant insists this letter was the beginning of his employment in respect of the suit subsequently filed which resulted in the distribution of the fund. He points to the words "reasonable compensation" to the attorneys in the latter part of the letter as supporting his theory that his employment should be reasonably compensated instead of on the basis of ten per cent. under a special contract. It appears the defendant answered this letter saying he had had the matter referred to therein under consideration for some time. The defendant's letter is of date September 16, 1902, and addressed to Messrs. McNeill & Levy, in which he says: "Your letter of August 29th, was forwarded while I was absent on my vacation. I have just returned. I have had the matter of the distribution of the fund remaining in trust company belonging to the Wise estate, under consideration for some time." During the same autumn the defendant filed the petition of all of the heirs, forty or more in number, against the St. Louis Union Trust Company. This case was returnable to the December term, 1902. The petition sets out in full the history of the trust fund, its amount, etc., and such facts as were essential, showing the rights of the parties to participate therein. The petition sets out the interests of the several plaintiffs with great care and precision. The defendant performed much painstaking labor in and about proving the claims of the numerous parties to that suit. Depositions were taken in several parts of the country and the proper proofs were made. The court decreed a distribution of the fund among all of the parties to the petition. The amounts awarded ranged from a very few dollars to as high as $60. It seems the fund was afterwards paid to defendant as attorney for the several heirs.

He remitted to them by postoffice money order fifty per-
cent. of the amount received. That is to say, defend-
ant, proceeding upon the theory that he should have
reasonable compensation for his services, deducted fifty
per cent. of the entire amount received as his compen-
sation, and remitted the remaining fifty per cent. to the
heirs. Plaintiff and twelve others who have assigned
their interests to him, declined to accept fifty per cent
of the fund as their portion. They insist that the de-
fendant should have remitted to them ninety per cent.
instead, and retained therefrom ten per cent for his
compensation. Eleven of the heirs assigned their
claims against the defendant for the amount claimed
by them to the present plaintiff. Plaintiff himself be-
ing one of the interested parties, instituted the present
action seeking to recover from the defendant as for
money had and received. The petition is in twelve
counts, each declaring upon the interests of a separate
individual heir, and in all the counts, except that per-
taining to the plaintiff's claim, it is alleged, that the
claim of the individual heir therein referred to has
been duly assigned to the plaintiff. In his answer, de-
fendant pleaded that he was employed to render the
services referred to under an arrangement by which he
was to receive reasonable compensation therefor; that
he performed the services, collected the moneys and re-
mitted the same to the several parties interested. He
pleaded, too, that in his investigation of this matter, he
discovered these same heirs had interests as well in the
estate of one David Wise, who departed this life about
1902. David Wise was a brother of William Wise, who
was the original donor of the trust fund, and, of course,
stood in the same relation to all of the heirs interested
in the trust fund as did the original donor of that fund.
He departed this life about 1902 at St. Louis, Missouri,
without leaving either widow or issue. There were
none others interested in his estate than the identical
collateral heirs interested in the trust fund. The defend-

ant set up in his answer that, representing the interests of the identical heirs, he had caused Gerrard Strode, public administrator of the city of St. Louis, to take charge of the estate of David Wise, deceased, and had instituted a suit in the name of the administrator against the McBurneys and the Lincoln Trust Company. The purpose of this suit was to recover from the McBurneys a considerable amount of money which was claimed to belong to the deceased, David Wise, and had, through the influence of the McBurneys, gotten into the possession of the trust company prior to the death of David Wise, as the money of the McBurneys. It is alleged that although no recovery of money was had in that suit, for it was afterwards dismissed for want of prosecution, it operated in fact to induce the McBurneys to turn over to the administrator of David Wise about $2,500 in bonds and $200 in cash, which rightfully belonged to the estate of David Wise. That this fund so indirectly recovered for the estate of David Wise, inured to the benefit of all of the heirs interested in the trust fund and that because of the fact defendant was at the same time representing these several heirs in the matter pertaining to the trust fund, he had charged the administrator of David Wise's estate a nominal fee only for his services therein, to-wit: $175. It is asserted that because of these facts, plaintiffs ought not to recover in this cause for the reason defendant had thus indirectly rendered them a great service in inducing a considerable sum, nearly $3,000, into the estate of David Wise, which would otherwise have been lost to them. It seems this portion of the answer is somewhat irrelevant to the issues in the present action for money had and received on account of the defendant's employment as attorney for the heirs in respect of their rights in the trust fund. Nevertheless it was not challenged by the plaintiff and the cause was tried as though it were a proper matter of defense. Evidence was received thereon without objection and the

matter is treated with more or less throughout the instructions.

The proof on the part of defendant tended to show that, without notifying any of the parties to that effect, he had in fact abandoned his employment under the agreement with Joseph Wise on a ten per cent. basis after the circuit court dismissed the petition of William Wise, filed February 12, 1902, and that he had taken up the matter anew on the basis of reasonable compensation as a result of the letter from McNeill & Levy of date August 29, 1902. There seems to be no correspondence in the record whatever with any person after that date as to the matter of defendant's compensation. The portion of the letter from McNeill & Levy relied upon as indicating defendant should have reasonable compensation, is the concluding part thereof, as follows: "If the fund is only $1,000 or $1,100 there will hardly be enough coming to either branch of the family to make it very profitable to the attorneys, but it may be that a number of persons entitled will unite, in which case there will be a fund sufficient to authorize reasonable compensation to the attorneys employed by them. Please let us hear from you at your earliest convenience and greatly oblige." As stated, after receiving this letter, defendant instituted a suit in the name of all the heirs against the St. Louis Union Trust Company which finally resulted in a decree of distribution. It does not appear that he notified any of the parties, however, that he would not render the services for ten per cent, nor does it appear that any of the heirs inquired after this date what compensation defendant would expect. It may be inferred that such heirs as knew of the ten per cent proposition expected the services to be rendered on that basis for compensation. The record discloses that Colonel Clopton performed proper service in the matter. The employment, first and last, entailed much correspondence, and a careful investigation of records. A number of depositions were taken;

that is, as counsel, defendant prepared appropriate questions in his office for the proof of interest, procured waiver of *dedimus,* notice, etc., and forwarded the same to different parts of the country to different notaries public for the purpose of taking proof. The bill and decree prepared by counsel in this case are works of art, and evince much careful thought and painstaking labor. A former judge of this court and other members of the bar of high standing gave testimony to the effect that fifty per cent of the amount recovered was a very reasonable compensation for the services rendered by Colonel Clopton. And, indeed, it seems to us, from a reading of the record, that ten per cent is a most meagre compensation for the very accurate and painstaking labor bestowed. The proof touching the matter of the suit of Gerrard Strode, administrator of the estate of David Wise against the McBurneys and the Lincoln Trust Company is not entirely consistent with the averments in the answer heretofore referred to respecting this matter. On this score, there was testimony on the part of defendant that while that suit was for the purpose of recovering certain moneys said to belong to the estate of David Wise, it turned out that the money sought to be recovered actually belonged to the McBurneys. Nevertheless, the effect of the suit operated indirectly to recover for the estate of David Wise $2,500 in bonds and $200 in money from the McBurneys. On the other hand, proof touching this question introduced by plaintiff, tended to show that the suit of Strode against the trust company and the McBurneys was predicated upon a mistaken idea that the moneys on deposit in the trust company in the name of the McBurneys rightfully belonged to David Wise in his lifetime; that upon taking the depositions of certain persons, it appeared these moneys were never the property of David Wise, and the suit was therefore dismissed. Evidence on behalf of plaintiff also tended to prove that at about the time this suit was filed, the McBur-

Jenkins v. Clopton.

neys delivered to Strode $2,500 in school bonds and about $200 in cash, which they conceded to belong to the estate of David Wise, and that the suit referred to had nothing whatever to do with influencing the conduct of the McBurneys in this behalf or recovering to the estate of David Wise the bonds and money referred to.

It is argued the court erred in refusing to direct a verdict for the defendant on several of the counts contained in the petition. This argument proceeds from the fact that it does not appear all of the heirs whose claims are asserted in the petition entered into a contract with the defendant to represent them on a basis of ten per cent of the amount recovered. It may be the evidence fails to show that each individual heir whose claim is asserted in the petition had a separate understanding with the defendant touching the amount of his compensation. There is no doubt the evidence for plaintiff tended to prove that defendant proffered to perform the services for Joseph F. Wise and his sister and brother on a basis of ten per cent and suggested to him to communicate with his relatives saying that he would be pleased to represent all of them. The evidence further tends to prove that a number of relatives at least had information of this proposition, and it may be that the jury were authorized to infer a contract of ten per cent with all of those parties who had knowledge of the ten per cent proposition made to Joseph F. Wise. However this may be, we believe this matter to be entirely immaterial in this action for money had and received. The argument of defendant proceeds as though this were a suit for the breach of a contract wherein the defendant had agreed to render services for a compensation of ten per cent. This we believe to be an erroneous view, for the action is for money had and received, and the contract between the parties in itself is important only as a matter of inducement. It appearing that as a result of the employ-

ment, defendant obtained moneys of the plaintiff and his assignors and still retains the same against their will. after demand, the matter as to whether the employment was for ten per cent or fifty per cent is entirely immaterial in respect of the question as to whether the case should be referred to the jury. If the defendant, as agent of the several heirs, became possessed of their moneys, he may not withhold the same against their consent after demand, and the action for money had and received to plaintiff's use will lie on the principle which inheres in the maxim, *ex aequo et bono.* Of course the defendant may show in defense that under the arrangement or contract, fifty per cent. of the amount belongs to him as compensation for his services. But this affords no reason why the question of fact involved as to what portion of the moneys in his hands belongs to him and what portion belongs to the plaintiff, should not be referred to the jury for determination. Now the proof shows that defendant recovered the moneys for this plaintiff and his assignors under some kind of an arrangement. He says, under an arrangement whereby he should have reasonable compensation for his services. Plaintiff says the arrangement was that he should have ten per cent of the amount recovered for those services. By the testimony of both plaintiff and defendant, it appears, nevertheless, that the defendant recovered the moneys as agent of this plaintiff and the several parties who have assigned their claims to him, and still has the same in his possession. It is true it appears the defendant mailed to each of them a postoffice money order for forty per cent. of the amount recovered. These money orders the individual heirs represented in this action declined to accept, and returned the same to defendant. It appears, too, that the defendant, before the institution of this suit, tendered to the attorney for the plaintiff the same amount, fifty per cent of the amount recovered for each individual heir whose claim is now asserted, in cash,

and this was likewise refused. The result of the whole matter is, then, that it appears the defendant has in his possession moneys, some portion of which belong to the plaintiff and some portion of which belongs to him; that he declines to accede to plaintiff's request to pay over the portion thereof which plaintiff asserts belongs to him for the reason, the defendant claims, he, in fact, owns a larger portion thereof than plaintiff concedes. Under these circumstances, it is certainly for the jury to determine the question of fact as to what portion of the moneys the respective parties should have—or in other words, the amount to which plaintiff is entitled. It is said that the contract asserted, by which defendant was to have ten per cent of the amount recovered as his compensation, is the very crux of the action and that the plaintiff and his associates who have assigned their claims to him predicate their suit thereon. Now we are not impressed with this argument. The suit is neither upon the contract nor does it seek a recovery for a breach of contract; but on the contrary, it is for money had and received. It is true the contract for ten per cent is in some respects relied upon as matter of inducement. Be this as it may, in this form of action, the plaintiff does not predicate the suit upon the contract; but instead, he predicates it upon the right or ownership in himself of the moneys retained by defendant from him and his assignors. In this form of action, the plaintiff may have the opinion of the jury on his right to recover ninety per cent of the moneys retained by defendant, even though it does not appear that all of the heirs represented by him had a special contract for ten per cent compensation with the defendant. It appears that through some arrangement the defendant became the agent of the several parties whose interests are asserted in this suit, and as such agent, he became possessed of moneys, a portion of which at least belongs to them and a portion to himself. Under these circum-

stances, an action for money had and received will lie on the just principle that one man shall not withhold that which rightfully belongs to another. It is the rule that an action for money had and received will lie in lieu of an action on a contract whenever the defendant has received money which is the property of plaintiff and which the defendant is obliged, by the ties of natural justice and equity, to pay him. For numerous authorities supporting the principle, see Moses v. McFerlan, 2 Burr. 1005; Crigler v. Duncan, 121 Mo. App. 381, 392; Winningham v. Fancher, 52 Mo. App, 458; Mansur v. Botts, 80 Mo. 651; Cary v. Curtis, 93 How. (44 U. S.) 236; Chesapeake, etc., Canal Co. v. Knapp, 9 Peters (34 U. S.) 541, 564, 565. The question as to what portion of the moneys retained by defendant the ties of natural and justice and equity require he should pay to the plaintiff in the circumstances of this case, is one of fact for the jury.

At his instance, the court gave plaintiff's instruction No. 1 as follows:

"The court instructs the jury that if they find and believe from the evidence that defendant was employed to secure a distribution of a fund held by the St. Louis Union Trust Company as Trustee under the will of William Wise, deceased, and that defendant accepted said employment and agreed to perform the necessary legal services for a charge or commission of ten per cent of the amount secured for distribution, and if you further find and believe from the evidence that defendant acted under such agreement for compensation, if you find such agreement was made, and that he thereafter instituted suit in the circuit court of the city of St. Louis on behalf of Wilber S. Jenkins, Laura Fisher, Clifford Jenkins, Glenn Rust, Ross Rust, William W. Sturgeon, Douglas R. Sturgeon, James L. Wise, George W. Wise, William Wise, Franklin Wise, Mary C. Beveridge, Anna Wise Emmons and others against the St. Louis Union Trust Company to secure a distri-

bution of the fund held by it as Trustee under the will of William Wise, deceased, and that each of said parties was entitled to a share of said fund, and that the court in its decree in said cause ascertained and determined the several shares of said parties to be as follows, to-wit: Wilber S. Jenkins, $11.53; Laura Fisher, $11.53; Clifford Jenkins, $11.53; Glenn Rust, $11.53; Ross Rust, $11.53; William W. Sturgeon, $34.57; Douglas R. Sturgeon, $34.57; James L. Wise, $27.67; George W. Wise, $27.67; William Wise, $27.67; Franklin Wise, $27.67; Anna Wise Emmons, $69.16; and if the jury further find and believe from the evidence that defendant collected from the St. Louis Union Trust Company the said several sums of money as attorney for said parties, and has not paid to them the amounts collected on their behalf, or any part thereof, and that said Laura Fisher, Clifford Jenkins, Glenn Rust, Ross Rust, William W. Sturgeon, Douglas R. Sturgeon, James L. Wise, George W. Wise, William Wise, Franklin Wise, and Anna Wise Emmons, have assigned to plaintiff their several shares in said fund, and their claim, if any, against defendant on account of the collection thereof, if the jury find that defendant did so collect said money, and that plaintiff as the assignee of said claims, if any, has demanded payment thereof from defendant and that such payment has been refused, and if you further find and believe from the evidence that the suit of Gerrard Strode, administrator of the estate of David Wise, deceased, against Lincoln Trust Company et al. referred to in the evidence, did not result in the recovery of any money, or that defendant's employment therein was not connected with and dependent upon his employment to secure a distribution of the William Wise estate, then you will find in favor of plaintiff and against the defendant, and assess the plaintiff's damages on the first count at the sum of $10.38; on the second count at the sum of $10.38; on the third count at the sum of $10.38; on the fourth

count at the sum of $10.38; on the fifth count at the sum of $10.38; on the sixth count at the sum of $31.11; on the seventh count at the sum of $31.11; on the eighth count at the sum of $24.90; on the ninth count at the sum of $24.90; on the tenth count at the sum of $24.90; on the eleventh count at the sum of $24.90, and on the twelfth count at the sum of $62.25."

It is said this instruction is erroneous, first, for the reason it permitted a recovery against the defendant if he agreed to perform the services on a ten per cent basis without indicating with whom or for whom he agreed to perform. We believe this criticism to be unsound for the reason it is entirely immaterial as to whom the contract for ten per cent was made with, if it was made at all. If the jury found as a fact, as therein directed, that defendant made a contract to collect the fund for ten per cent and afterwards made the collection and retained fifty per cent thereof for his services, then he retained forty per cent of that amount without any right whatever to do so. And this is true without regard to whom the defendant contracted with. The criticism of this instruction proceeds, indeed, upon the same theory heretofore discussed; that is, as though the suit is for a breach of contract and it is important for the jury to find the precise terms of the contract. This matter is immaterial if it appears that defendant became the agent of these parties, collected the money and retained a greater portion thereof than he was entitled to retain under the arrangement. As stated before, the contract for ten per cent compensation referred to in this instruction is not the gist of the action, but on the contrary, the action predicates upon the right of the plaintiff in the moneys which he asserts the defendant wrongfully withholds from him.

The second criticism of this instruction relates to the reference therein to the case of Strode, administrator against the McBurneys and the Lincoln Trust

Company.   It is said the court erred in its reference
to that case in the instruction.   Now it seems the de-
fendant ought not to make this criticism for it was
he who injected the case of Strode v. The McBurneys
and the Lincoln Trust Company into the present con-
troversy.   The defendant set out the facts pertaining
to that transaction in his answer and was permitted,
without objection, to give testimony tending to prove
that he performed services in that case which inured
to the benefit of the several heirs.   It is true it did
not appear that he was employed therein by the heirs;
nevertheless the theory advanced by defendant at the
trial on the proof made was that that suit indirectly re-
sulted in turning about $2,700 in bonds and money into
the estate of David Wise and that he made a charge
of only $175 against the administrator therefor for
the reason he intended to charge fifty per cent against
the heirs to whom his services inured for services ren-
dered to them in procuring the distribution of the
trust fund; that this furnished an additional reason
why his charge of fifty per cent for procuring the dis-
tribution of the trust fund among the heirs, was rea-
sonable.   Evidence introduced by plaintiff touching
this matter, however, tended to prove that this suit
served no purpose whatever toward recovering any
fund for the estate of David Wise and that the $2,500
in bonds and $200 in cash received by the administra-
tor from the McBurneys was wholly independent of
the suit mentioned.   This matter having been intro-
duced into the case by defendant in both his answer
and proof, it was certainly not reversible error for
the court to treat with it in the instruction, as it did.
The instruction required that before the jury could
find for the plaintiff in the present action, it should
find not only that defendant had collected the money
on a ten per cent basis and retained the same, but that
it should further find the suit of Strode, Administrator,
against the McBurneys and the Lincoln Trust Com-

pany referred to in the evidence did not result in the recovery of any money or that defendant's employment therein was not connected with and dependent upon his employment to secure a distribution of the William Wise estate. This operated only to require the jury to find additional facts in favor of plaintiff's right to affix his claim against the defendant and was certainly not prejudicial to the defendant. We agree that the matter was wholly unimportant to the issues involved in the present controversy. However, the defendant himself is responsible for the matter of that case being presented in this record and should not be permitted to complain even if it did tend to confuse the issue.

The next criticism leveled against this instruction is that it undertook to cover the entire case on plaintiff's theory and entirely ignored the defense of *quantum meruit;* that is, it ignores the defense that the defendant should receive reasonable compensation for his services. Now it is very true this instruction submitted the theory of the case relied upon by the plaintiff. That was entirely proper, however, if another theory of the case was submitted in other instructions which would allow the jury to award defendant reasonable compensation for his services if it saw fit to do so. That is, if other instructions permitted the jury to allow defendant compensation without regard to the alleged ten per cent agreement, and permitted a finding of reasonable compensation for him. Now it is very true the court gave no instructions on behalf of the defendant—that is, the court refused all of the instructions requested by the defendant and, therefore, from defendant's standpoint, his theory of the case was probably not presented in instructions as he might choose to have it. This we believe resulted from the fact that the instructions requested by him were not entirely accurate, and the court was justified in their refusal. It was not incumbent on the court to

instruct the jury from the defendant's standpoint un-
less properly requested so to do. [Sowders v. Railway,
127 Mo. App. 119, 104 S. W. 1122.] Be this as it may,
in plaintiff's third instruction the court instructed in
substance that if they believed from the evidence de-
fendant was employed to secure the distribution of
the fund and had no agreement as to his charge or
pay for the services, etc.; that he collected the fund
and had the amount then in his possession, and had
failed and refused to pay the same to the parties, then
they might find for the plaintiff such amount as he
should receive, after deducting whatever the jury may
find from the evidence the defendant's services were
reasonably worth. It, therefore, appears that by prop-
er instruction, defendant's theory of the case was sub-
mitted to the jury at the instance of the plaintiff and
they were authorized in the event they found he had
entered into no agreement to the contrary, to award
him reasonable compensation for his services.

At the instance of plaintiff, the court instructed
the jury as follows:

"The court instructs the jury that if they find and
believe from the evidence that defendant was employed
to secure a distribution of the fund held by the St.
Louis Union Trust Company as Trustee under the will
of William Wise, deceased, and that the defendant ac-
cepted said employment and agreed to perform the
necessary legal services for a charge or commission
of ten per cent of the amount secured for distribution,
defendant cannot charge more than the amount agreed
upon, unless before the rendition of the services men-
tioned in the evidence, he notified the person or persons
so employing him or his agent or attorney that he
would not perform said services for the amount agreed
upon, if you find any such agreement was made, and
such person or persons, or his agent or attorney either
consented to his rendering such services for a differ-

141 App.—7

ent compensation or did not object to his rendering such services after receipt of such notice."

This instruction is criticised for the same reason, that it fails to require the jury to find by whom the defendant was employed and with whom he agreed to a compensation on a ten per cent basis. The reference therein to the case of Strode, etc., v. The McBurneys et al. is also criticised as before. What has been said above touching these matters applies as well to this instruction, and they will not be further noticed.

At the instance of plaintiff, the court instructed the jury as follows:

"If the jury believe from the evidence that the defendant Wm. N. Clopton, was employed to secure a distribution of a fund held by the St. Louis Union Trust Co. as trustee, under the will of William Wise, deceased, and that the defendant accepted said employment and that he had no agreement as to his charge or fee for such services at the time of such employment, and if you further find from the evidence that he thereafter instituted a suit in the St. Louis Circuit Court on behalf of Wilber S. Jenkins, Laura Fisher, Clifford Jenkins, Glenn Rust, Ross Rust, William W. Sturgeon, Douglas R. Sturgeon, James L. Wise, George W. Wise, William Wise, Franklin Wise, Mary C. Beveridge; Annie Wise Emmons, and others, against the said Trust Company to secure such distribution, and that each of said parties was entitled to a share of said fund, and that said court in its decree in said cause ascertained and determined the several shares of said parties to be as follows, to-wit: Wilber S. Jenkins, $11.-53; Laura Fisher, $11.53; Clifford Jenkins, $11.53; Glenn Rust, $11.53; Ross Rust, $11.53; William Sturgeon, $34.57; Douglas R. Sturgeon, $34.57; James L. Wise, $27.67; George W. Wise, $27.67; William Wise, $27.67; Franklin Wise, $27.67, and Annie Wise Emmons, $29.16, and if the jury further find from the evi-

dence that defendant collected from said Trust Co., said several sums of money as attorney for said parties, and that he has not paid to them the amounts so collected, or any part thereof, and that said Laura Fisher, Clifford Jenkins, Glenn Rust, Ross Rust, William W. Sturgeon, Douglas R. Sturgeon, James L. Wise, George W. Wise, William Wise, Franklin Wise and Annie Wise Emmons have assigned to the plaintiff their several shares in said fund, and their claims, if any against the defendant on account of the collection thereof (if the jury find from the evidence that the defendant did so collect said money) and that the defendant has failed and refused to pay over the same, and if you further believe from the evidence that the suit of Gerrard Strode, administrator of the estate of David Wise, deceased, against the Lincoln Trust Company et al. referred to in the evidence, did not result in the recovery of any money, or that the defendant's employment therein was not connected with and dependent upon his employment in said suit of plaintiff and others against the St. Louis Union Trust Co., then you will find in favor of the plaintiff and against the defendant on each of the twelve counts or claims mentioned in the evidence and assess his damages upon each claim at the amount so received by the defendant, after deducting whatever the jury may find from the evidence the defendant's services were reasonably worth."

This instruction is criticised, first, for the identical reasons levelled against the plaintiff's first instruction heretofore discussed. What has been said with respect to those matters obtains alike to the present criticism of the third instruction. They will not be repeated. The instruction, however, is further criticised for the reason it authorized a recovery for the plaintiff even though there was no special ten per cent contract for the services. This criticism proceeds also upon the theory that the suit is for a breach of contract to collect moneys for ten per cent compensation.

It overlooks the fact that the suit is for money had and received. This question has been fully discussed heretofore and it is unnecessary to again advert to it. It is said though the instruction is a clear departure from the pleadings and submitted to the jury a theory of the case not authorized—that is, the jury were authorized under this instruction to find for the plaintiff even though it appeared the defendant had not contracted to perform the services for ten per cent. Under these circumstances, the jury were told that if they found the defendant collected the money, retained the same, and refused to pay it over to the parties, then the finding should be for the plaintiff for such sum as was proper, after allowing defendant reasonable compensation for his services. Now we believe this instruction was entirely proper in this case for money had and received. Of course, if the action were on a special contract, the plaintiff could recover only on the contract pleaded and not on a different cause of action. [Laclede Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384; Crigler v. Duncan, 124 Mo. App. 281, 293.] However, this rule does not preclude one for whom money has been collected by another, pursuant to some contract, from recovering his portion in an action for money had and received. As before stated, the arrangement for ten per cent asserted by the plaintiff is certainly not the essence of the case, although it may be material in developing the facts and disclosing the true interests the respective parties had in the moneys retained by defendant. The gist of the action being for money had and received, it was entirely proper to submit the case to the jury in this form. [Crigler v. Duncan, 124 Mo. App. 381.] This instruction did not submit to the jury an issue not presented in the case, for the reason the issue was not on a breach of a contract for ten per cent compensation, but on the contrary, was whether the defendant had, under the authority of some sort of contract, collected and

retained the moneys which rightfully belonged to the plaintiff. Besides, it submits the very issue tendered by defendant and is within the pleadings. The defendant may certainly not complain that the issue tendered by him was submitted. Even if the issue thus submitted was not within the allegations of the petition, it is within the issues defined in the pleadings as defendant's answer tendered it and plaintiff joined issue thereon.

Defendant requested and the court refused the following instruction with respect to each and every count of the petition:

"The court instructs the jury to find for the defendant on the first count of the petition, unless the jury believe from the evidence in the case that prior to the 15th day of November, 1902 the date of filing the petition in the case of Sarah Miller and others against the St. Louis Union Trust Company, defendant, Clopton agreed with plaintiff W. F. Jenkins, that he, said Clopton, would perform the necessary services to secure the distribution of the fund then in the hands of the said Trust Company for a charge of ten (10) per cent of the amount secured for distribution, and that the said suit was instituted and prosecuted to a judgment under such agreement.

"And the court instructs the jury that the burden of proof is on the plaintiff to prove by a preponderance of evidence that defendant agreed with said Jenkins to render said services for ten (10) per cent of the amount collected."

Defendant complains that the court erred in refusing this instruction with respect to each count. We are not so persuaded. This instruction again presents a theory of the case as though the contract for ten per cent was the gist of the action and ignores the fact that under all of the evidence defendant collected and still has possession of the moneys referred to. The theory presented by this instruction is that unless

plaintiff proved a contract for ten per cent compensa-
tion with all of the heirs, the suit should fail. This
cannot be the law of the case for if the defendant col-
lected the moneys under his employment and retains
them, he should account to the plaintiff therefor in
some manner; that is to say, the jury should either
award plaintiff ninety per cent and to the defendant
ten per cent in affirmance of the contract asserted, or,
*contra* thereto, award to the plaintiff such portion as
would be proper and to the defendant such portion
as amounted to reasonable compensation for his ser-
vices.

The defendant requested and the court refused his
instruction No. 2, as follows:

"The court instructs the jury that if they believe
from the evidence defendant rendered services as at-
torney at law in the Circuit Court of the City of St.
Louis in procuring the evidence, preparing the peti-
tion and obtaining a decree of Court to distribute the
fund held by the St. Louis Trust Company among the
heirs of Mary Wise under the will of William Wise,
and that defendant distributed and paid over to the
parties named in the petition, their respective shares
of said estate, less the charge of fifty per cent for col-
lecting and distributing said fund retained by defend-
ant as his attorney's fees, they will find for the de-
fendant if they believe from all the evidence in the
case the charge of fifty per cent, was a reasonable
charge as shown by the evidence, for the services ren-
dered by defendant."

It is said the court erred in refusing this instruc-
tion. In substance, this instruction tells the jury that
they should find for the defendant if they believed he
performed the services and collected the money and
paid the same over to the parties named, less his charge
of fifty per cent for collecting, if they believed the
charge of fifty per cent was reasonable. Now we be-
lieve this instruction was properly refused for the rea-

son it ignores the fact that such moneys as were turn-
ed over to the parties mentioned was returned to the
defendant by them and are still in his possession. The
money was not paid into court and if a tender was
made, it was not kept up in the case. Had the tender
been kept up it may be, in view of the fact defendant
made the tender of fifty per cent, that the costs should
therefore fall on plaintiff, if a recovery was not for a
greater amount than that tendered. However, this is
unimportant for the reason the recovery allowed by
the jury was for ninety per cent of the fund collected;
that is, the jury awarded the defendant ten per cent
only, as though it found in affirmance of the contract
of employment asserted; or that if there were no con-
tract, then ten per cent was a reasonable compensation.
The mere fact that that defendant paid to the parties
named in the petition fifty per cent of the fund is no de-
fense to this action unless they retained or accepted
that amount; and the evidence shows they declined
to accept it. The instruction was properly refused.

Defendant requested instruction No. 3, as follows:

"The court instructs the jury that before they can
find by their verdict that there was a contract between
plaintiff and his assigns and the defendant, that the
defendant would prosecute the suit of the heirs of Mary
Wise, deceased, against the St. Louis Union Trust
Company, and distribute the proceeds of such suit for
a fee of 10 per cent on the amount collected, they must
find from the evidence that there was an agreement
between plaintiff and his assignors, entered into with
defendant before the institution of the said suit, that
defendant was to charge only ten per cent for his ser-
vices, and that the parties on both sides fully under-
stood that such was the contract."

This the court refused. It is argued the court
erred in so doing. This instruction seems to be ab-
stractly correct in so far as it asserts the doctrine that
before the jury could find a contract to collect and dis-

tribute the fund for ten per cent, there must appear an agreement between plaintiff and his assignors before the institution of the suit, and the defendant or that both parties so understood it.   However, it is not so relevant to the issues in the present controversy as to constitute its refusal reversible error, for as said before, the suit does not predicate on the contract, and the question of the ten per cent agreement between the parties was sufficiently covered by several other instructions in the case.   In view of the other instructions, the refusal of this one does not constitute error* against appellant materially affecting the merits.  Unless such error appears, we are commanded by the statute not to reverse a judgment.   See sec. 865, R. S. 1899, sec. 865, Mo. Ann. St. 1906.

Defendant requested instruction No. 4, as follows:

"The court instructs the jury that in the petition in this case plaintiff alleges that James L. Wise was entitled by the decree in the case of the heirs of Mary Wise, deceased, against the St. Louis Union Trust Company to the sum of $27.67; Geo. W. Wise to $27.67; Wm. Wise to $27.67; Frank Wise, to $27.67.

"If the jury believe from the evidence that prior to the bringing of this suit defendant had sent to said James L. Wise, George W. Wise, William Wise and Frank Wise, postoffice money orders or money of the United States, for fifty per cent of said sums, then the jury will find for the defendant on the 8th, 9th, 10th and 11th counts in said petition, if they believe from the evidence that defendant's services were reasonably worth fifty (50) per cent of said services for the legal services rendered by him.   Unless the jury believe that before the institution of said suit of the heirs of Mary Wise, deceased, to recover said money defendant agreed with the said James L. Wise, Geo. W. Wise, Wm. Wise, Franklin Wise, and Anna Wise Emmons to prosecute said suit for a fee of ten (10) per cent and the burden

of proof is on plaintiff to prove such agreement by a preponderance of evidence."

This instruction the court refused. Defendant complains of error in respect of this matter. This instruction was properly refused for the reason it treated the mere sending of the money orders therein named as tantamount to an acceptance of the same by the parties to whom sent. It ignores the fact that although the defendant sent the money orders to these parties, the orders were returned to him and he still has possession of the money. Of course the mere sending of the orders, which were not accepted, was not equivalent to payment. Although the mere sending of the orders to the parties through the mail may be *prima facie* evidence tending to show they received them, it is certainly not such unless they were properly addressed. Now the testimony of defendant in respect of James L. Wise is to the effect that through mistake, he sent the money order for his share to Columbus, Georgia, when in fact James L. Wise resided in Ohio. Defendant testified touching this matter as follows: "I sent that to Columbus, Georgia. I should have sent it elsewhere, but it never came back to me." This instruction, among other things, submitted to the jury the sending of an order to James L. Wise as equivalent to a payment to him. This cannot be true in view of the fact that such order was mailed to Columbus, Georgia, when the party resided in Ohio. Besides, the question as to whether or not all of these parties did receive payment from defendant or accepted payment from him, was submitted by the court in the several instructions on behalf of plaintiff which required the jury to find that the defendant had both failed and refused to pay them.

Defendant requested his instruction No. 5, as follows:

"The court instructs the jury that in the petition in this case, plaintiff alleges that he was entitled by the decree in the case of the heirs of Mary Wise, de-

ceased, against the St. Louis Union Trust Company to $11.53; that Laura Fisher was entitled under said decree to $11.53; that Clifford Jenkins was entitled to $11.53; that Glenn Rust was entitled to $11.53; that Ross Rust was entitled to $11.53; that William Sturgeon was entitled to $35.37; that Douglas R. Sturgeon was entitled to $34.37; and Anna W. Emmons was entitled to $69.16.

"If the jury believe that prior to the bringing of this suit defendant had sent to said Laura Fisher, Clifford Jenkins, Glenn Rust, Ross Rust, William Sturgeon, Douglas Sturgeon and Anna W. Emmons, postoffice orders for one-half of their several respective sums as stated in the petition, and that said parties had received said postoffice orders, and that they returned to defendant said postoffice orders through Geo. D. Harris, their attorney, and that thereafter defendant tendered to such attorney cash money of the United States for one-half of said several sums, and that said Harris refused to accept said money, then the jury will find for the defendant on the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th and 13th counts of plaintiff's petition, if they believe from the evidence that defendant's services were reasonably worth fifty per cent of said sums for the legal services rendered by him.

"Unless the jury further find from the evidence that before the institution of the said suit of the heirs of Mary Wise to recover said money defendant agreed with the said W. F. Jenkins, Laura Fisher, Clifford Jenkins, Glenn Rust, Ross Rust, William W. Sturgeon, Douglas Sturgeon and Anna Emmons to prosecute said suit for a fee of ten (10) per cent of the amount collected.

"And the jury are instructed that the burden of proof is on plaintiff to prove such agreement by a preponderance of the evidence."

This instruction the court refused to grant and error is predicated on such refusal. This instruction was

Jenkins v. Clopton.

properly refused for the reason it directed the jury, in effect, that the tender of fifty per cent of the amount of money collected by the defendant to the plaintiff's attorney was equivalent to payment thereof. It ignored the fact that this tender was not accepted and that the defendant still retains the amount. It may be that had the defendant kept up the tender by a deposit in court, and the plaintiff had not recovered more than fifty per cent the costs would have fallen on the plaintiff. Be this as it may, the tender in and of itself did not amount to a payment to the parties entitled thereto, and the jury would certainly not be authorized to find the issue for defendant on a mere tender of fifty per cent of the amount to the parties, even though it should find that such an amount was all they were entitled to and that the other fifty per cent was reasonable compensation only for defendant's services.

Because of the earnestness with which the several questions mentioned were pressed upon the court, we have unduly prolonged the opinion by discussing separately each and every suggestion of error to be found in the briefs, even though we would be justified in not so doing. After having given the matter the most careful and thoughtful attention, we are persuaded that none of the errors of law complained of merit a reversal of the judgment. It is true the defendant performed much painstaking labor for the very meagre compensation allowed by the verdict of the jury, and it may be the result is unjust to him. If so, it is a matter with which the appellate court is not concerned, as under our system of practice, the questions of fact are peculiarly within the province of the tribunal awarding the verdict.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.