CRIGLER, Respondent, v. DUNCAN, Appellant.

St. Louis Court of Appeals, January 8, 1907.

1. PLEADING: Variance: Special Contract. In an action by a principal against his agent for money obtained by the agent in the sale of the principal's property and not accounted for, the evidence is examined and held to be consistent with the declarations of the petition, even though the petition should be construed as declaring on a special contract.

2. ———: Money Had and Received: Principal and Agent. Where a real estate agent sold the property of his principal and failed to account for all of the proceeds, a suit instituted by the principal to recover the balance unaccounted for, was an action for money had and received although the petition set forth a special

contract under which the agent had charge of the property and alleged fraud on the part of the agent in concealing from the principal the real purchaser and the amount of the purchase price.

3. **PRACTICE: Verdict Responsive to Issues.** Where the action was not upon the special contract, although such contract was pleaded, but was an action for money had and received, a verdict for a sum less than the amount sued for was not erroneous on the ground that it was not responsive to the issues.

Appeal from Audrain Circuit Court. — *Hon. J. D. Barnett,* Judge.

AFFIRMED.

*P. H. Cullen* for appellant.

(1) The defendant acted merely as an instrument in the performance of an appointed service. His employment was rather a service than a trust. The plaintiff did not rely upon him for counsel and direction, hence defendant did not owe to plaintiff the obligation of an agent in the general sense. Mining Co. v. Fox, 39 N. C. (4 Ired. Eq.) 61; Grady v. O'Reily, 116 Mo. 346; Ins. Co. v. School Dist., 80 Fed. 366; Walker v. Carrington, 74 Ill. 446; Collins v. Sullivan, 135 Mass. 922. (2) The letter written by plaintiff to defendant and the contract sent with it taken in connection with plaintiff's reply, making only certain modifications, and defendant's acts in selling the land pursuant to said correspondence constituted a contract entitling defendant to the excess over $5,500. Kennedy v. Siemers, 120 Mo. App. 86; Robertson v. Tapley, 480 Mo. App. 239; Bruckman v. Dry Goods Co., 91 Mo. App. 466; Graham v. State, 66 Ind. 394; 1 Beach, Mod. Law Cont., secs. 57, 58. (3) The plaintiff sued on a special contract claiming $733.33 due him, and interest. Under the instructions the jury were bound to return a verdict for the full amount or nothing, and the verdict for $500

is not responsive to the issues and should be set aside on the motion of defendant. Cole v. Armour, 154 Mo. 333. (4) The plaintiff sued on a special contract by which he alleges, the defendant bound himself to sell for the highest obtainable price, and he must recover on this special or express contract or not at all. The proof wholly fails to establish the express contract sued upon. Clement v. Yates, 59 Mo. 625; Laclede Co. v. Iron Works, 159 Mo. 154; State v. Meysenburg, 171 Mo. 55; Cosgrove v. Realty Co., 175 Mo. 111; Bozwell v. Railroad, 180 Mo. 463; Veatch v. Norman, 84 S. W. 150. (5) The allegations in the petition of an express contract cannot be established or supported by proof of an implied contract. Huston v. Tyler, 140 Mo. 252; Hotel Co. v. Furniture Co., 73 Mo. App. 135.

*Fry & Rodgers* for respondent.

(1) This is an action for money had and received and though the petition pleads the evidence extensively this case comes within the rule that where sufficient facts are proved to warrant a recovery upon some cause of action stated, the plaintiff will not be turned out of court because his proof fails to establish other facts alleged in his petition which were not necessary to a good cause of action. Harrison v. Lakenan, 169 Mo. 581; Cole v. Armour, 154 Mo. 353; Chapman v. Currie, 51 Mo. App. 40; Winningham v. Fancher, 52 Mo. App. 458; Chase & Son v. Mercantile Co., 63 Mo. App. 482. (2) The petition is not an action on a special contract, but is a cause of action, based on the rule of law which authorizes a plaintiff to sue and recover from a defendant the amount of money belonging to plaintiff which the defendant has received for plaintiff's use. Johnson v. Bank, 116 Mo. 567; Beal v. Bank, 79 Mo. App. 269; Winningham v. Fancher, 52 Mo. App. 463; Clark v. Bank, 57 Mo. App. 285; 14 Ency. of Pl. and Pr., p. 53 and citations; Ingram v. Ashmore, 12 Mo. 574; Wil-

liams v. Railroad, 112 Mo. 468; Moore v. Gaus & Sons, 113 Mo. 107; Mansur v. Botts, 80 Mo. 657; Royce, Allen & Co. v. Oakes, 39 L. R. A. 845, 20 R. I. 418. (3) The rule that the proof must correspond to the allegations applies only to such allegations as are themselves material to the action. It does not apply to matters of inducement, and in explanation, or matters which are surplusage. Bell v. Scott, 3 Mo. 212; Ward v. Steamboat, 7 Mo. 582; State v. Millsaps, 69 Mo. 359; Clements v. Malony, 55 Mo. 352; Campbell v. Wolf, 33 Mo. 459; Crawford v. Thoroughman, 13 Mo. App. 569.

GOODE, J.—Plaintiff and defendant are brothers-in-law. The former resides in the State of Tennessee and the latter in Audrain county, Missouri. On the death of plaintiff's father he and his two sisters, Mrs. Duncan, wife of defendant, and Mrs. Lonergan, inherited a farm of two hundred and twenty acres in Audrain county. Subsequently plaintiff bought Mrs. Lonergan's interest, thereby becoming the owner of an undivided two-thirds of the farm, the other third being owned by Mrs. Duncan. A futile attempt had been made by plaintiff to purchase her interest. Defendant and N. S. Meyers were partners engaged in the real estate business under the firm name of Duncan & Meyers in the city of Mexico, Missouri. Plaintiff brought this action to recover from Duncan two-thirds of eleven hundred dollars, or $733.33, alleged to be due from defendant as part of the purchase price of the aforesaid farm, defendant having sold the farm as plaintiff's agent for $6,600, accounting to plaintiff on the supposition that the price received was but $5,500. The sale occurred in the year 1902. Defendant was authorized by letter to act as plaintiff's agent and all communications between the parties regarding the transaction were by correspondence. Most of the letters are in the record and such portions of them as are material to the points

involved on the appeal will be stated. On June 27, 1902, Duncan wrote Crigler stating that he (Duncan) was negotiating with a party to whom he could sell the place for $5,500 if the party could get a loan through; stating further that he (Duncan) was willing to let his interest go on this basis; that two-thirds of the purchase price would go to plaintiff without any expense except for the abstract and deed and no charge would be made for Duncan's services; also that *this was all the place would bring as it had been shown to many persons and no better offer received.* (All italics are ours.) It should be stated that plaintiff had instituted a partition suit in the circuit court of Audrain county to have the land divided and had given an option on his interest to the real estate firm of Lakenan & Barnes, which did business in Mexico. The option was for $6,000 and was to expire July 18. Duncan requested Crigler, in case the sale for $5,500 was made, to dismiss the partition suit at his own expense and pay his share of the abstract. To that letter Crigler responded July 1st, telling Duncan to close up with his man, but he must send written releases from all options given Lakenan & Barnes or others. Duncan answered July 10th, saying he had received letters from Lakenan & Barnes to Crigler which the latter had sent with comments on them. Duncan said he noticed what Lakenan & Barnes said about selling the place for $6,000, but intimated that said price could not be obtained. He further declared he was not trying to take advantage of Crigler. Plaintiff wrote July 12th, asking Duncan how his trade was getting along and if it was going through; that he (plaintiff) thought Lakenan & Barnes did not have a party, but only believed they could sell the farm for $6,000. The letter contained this language: "It seemed strange to me that you was trying to sell at 55 when they thought they were going to land their man at 60." The next

letter from Duncan was written July 31st, and stated that he had just returned from a trip through Illinois, and that a number of prospective buyers would come to Missouri to look at the land in two or three weeks, after they were through work on their oat crops, and then there would be no trouble in getting a buyer. On July 20th plaintiff wrote that he had made a conditional sale of his two-thirds interest to Lonergan, provided Duncan did not succeed in selling for $5,500, but the latter trade was not to be interfered with. On August 24th Duncan wrote a letter in which was inclosed a contract for Crigler to sign, authorizing the firm of Duncan & Meyers to sell the land for "$5,500 net; that is to say, free from any cost of showing, or advertising said farm, to owners or commission for making sale. If said agents sell said farm for more than $5,500 they are hereby authorized to retain said increase to their own use." Duncan's letter said the firm of Duncan & Meyers *would try to dispose of the farm at a figure above that named, if they could get it, but it was a hard proposition because the place was "a wilderness of weeds."* Instead of signing the inclosed contract authorizing the agents to keep any excess of price over $5,500 Crigler wrote a letter under date of August 25th, in which he said, among other things, "I hereby authorize you, T. B. Duncan (not Duncan & Meyers) to sell my interest in the farm at Martinsburg, lately owned by John W. Crigler, dead— said interest being a two-thirds part of $5,500 for entire tract. My interest in same being two-thirds of the amount; no commission to be charged me for selling said land, and no expense except making deed; provided the sale is fully consummated and entirely closed prior to the next session of the circuit court held at Mexico, Missouri." On September 8, 1902, Duncan wrote inclosing a contract for the sale of the place in which he said: *"I have made the best terms possible and hope they are satisfactory."* Other matters are contained in

the letter, Duncan saying he had got $233.33 more for Crigler than the latter gave Lonergan and therefore thought the partition suit ought to be dismissed at plaintiff's expense. The contract inclosed with said letter was dated September 5, 1902, and purported to be between T. B. Duncan, agent for W. L. Crigler, and Alma C. Duncan, parties of the first part and S. J. Terrill party of the second part. The contract provided for the sale of the farm to S. J. Terrill for $5,500, of which $2,000 was to be deposited in the Mexico Savings Bank, to be paid on certain conditions, and the balance of the purchase money to be paid on or before March 3, 1903. The parties of the first part were to make a warranty deed in fifteen days and deliver the same to said bank to be held in escrow until full payment was made. There were other provisions not necessary to be stated. Crigler executed a deed pursuant to the contract, supposing the land had been sold to S. J. Terrill. In truth S. J. Terrill was Mrs. Sally J. Terrill a sister-in-law of N. S. Meyers, one of the members of the firm of Duncan & Meyers. Crigler did not know Mrs. Terrill nor her relationship to Meyers. She had not bought the farm and had never seen it; but was used as a conduit through which to pass the title to E. F. Pumphrey or Pumphrey & Company, a firm of land buyers from Iowa, composed of said Pumphrey and J. L. Galloway. Duncan and Meyers had sold the land to Pumphrey and Galloway for $6,600 at the time they represented to Crigler that it had been sold to Mrs. Terrill for $5,500. Mrs. Terrill was paid $25 by them for her part in the transaction, in which she acted for the accommodation of her brother-in-law, and, so far as appears, without knowing she was being used for an improper purpose. On September 5, 1902, the date of the contract between Crigler and S. J. Terrill, a contract in writing was executed between Mrs. Terrill and E. F. Pumphrey & Company for the sale of the farm to the latter parties for $6,600. That con-

tract was signed in behalf of Mrs. Terrill by Duncan & Meyers, her agents, by T. B. Duncan, the defendant. Mrs. Terrill executed a deed to Pumphrey pursuant to it. Crigler ascertained through another real estate agent, that $2,200 had been deposited in the Mexico Bank, pending an examination of the title to the farm, and as his contract with S. J. Terrill called for a deposit of $2,000, he wrote Duncan October 1, 1902, inquiring about the discrepancy and asking how the trade was getting along and if everything was all right. On November 2, 1902, Duncan wrote Crigler complaining of a letter the latter had written to Locke and saying the first payment of $2,000 had been deposited in the bank to Crigler's credit. The letter was rather contentious and wound up by stating that Duncan had made the division of the first payment to suit himself and asking what Crigler was going to do about it. In January, 1903, Duncan wrote the following letter:

"Mexico, Mo., January 25, 1902.

"W. L. Crigler,

"Shelbyville, Tenn.

"Dear Sir:—I am in receipt of your letter of 23d and in reply will say that in regard to $2,200 deposited in Savings Bank, that Terrill sold the place and there was a deposit made to my credit of such an amount, but had nothing to do with you or your interest. Terrill's contract called for $2,000 down and the balance on March 1, 1903, which has been complied with.

"I received a commission from Terrill and got it out or rather will get it at the March settlement.

"It would seem to me that you have had no interest in any transaction concerning this farm after receiving what the contract calls for and at no expense, and at first reading your letter I was disposed to tell you it was none of your business since you seemed to have no confidence in me but in everybody else in Mexico; how-

ever on second thought I have given you the exact facts which are easily substantiated.

"I have had the pleasure of reading your letter to Sam Locke and will say that I did not feel kindly to you. In conclusion will say that your money will be paid on March 1st, as per contract, but unless you find that survey made by Rodgers showing 220 acres, the place will have to be surveyed again,

"I am very truly,

"T. B. DUNCAN."

An attempt was made to show that after receiving the above letter, Crigler accepted two-thirds of the $5,500 as his part of the purchase price, with full knowledge that the land had been sold for $6,600; thereby ratifying what Duncan had done as his agent and waiving any right to the money in suit; but the evidence shows clearly that Crigler did not then understand the facts, but supposed Mrs. Terrill was a bona fide purchaser of the land from him; that she had subsequently sold it to Pumphrey & Company and was to pay Duncan a commission for making the latter sale. There is no conflict in the evidence. Duncan did not take the stand nor did any other witness in his behalf, except Mr. Looke, who swore only that he was paid $100 for assisting in the sale to Pumphrey & Company.

The court submitted the issues to the jury by instructions against which no complaint is made and a verdict was returned in plaintiff's favor for $500.

1.   A point much insisted on is that the petition declares on a special contract by which plaintiff authorized defendant to sell the land "for the highest obtainable price" which defendant was able to get, and not to sell for less than $5,500; whereas the evidence shows a contract authorizing a sale for $5,500; thereby disproving the contract declared on and preventing a recovery. A fair interpretation of the correspondence between the parties is that defendant agreed to sell the farm for

plaintiff at the highest obtainable price and was employed on the assumption that he would do so. It is true he was authorized to accept $5,500; but this was because of his representation that no higher price could be procured. The evidence is consistent with the petition, and if this was an action on a special contract, there would not be a failure of proof.

2. Because of another assignment of error, it may be important to determine the nature of the action, and, in our judgment, it is one for money had and received by defendant for the plaintiff and to which plaintiff is entitled; not for the breach of an express contract. It is true a contract authorizing defendant to sell for the highest obtainable price and for not less than $5,500, is alleged as matter of inducement and to show the authority under which defendant collected plaintiff's money. But said contract is not the gravamen of the petition or ground on which judgment is asked. The petition alleges fraud and deception on defendant's part; but those averments, too, are explanatory and incidental, not of the essence of the case stated, and might have been omitted without leaving the petition demurrable. Defendant is charged with having represented to plaintiff that the land had been sold to S. J. Terrill for $5,500, and the contract with Mrs. Terrill is set out, and alleged to have been executed to assist in deceiving plaintiff regarding the purchaser and price. It is further averred that defendant, while acting as plaintiff's agent, sold the farm to E. F. Pumphrey & Company prior to the date of the contract with Mrs. Terrill, for $6,600, and concealed said sale from plaintiff; that after procuring plaintiff's deed to S. J. Terrill, defendant had her convey the land to Pumphrey; that she never made any claim to, or had any interest in, the land or paid any money therefor, but was used by defendant in a scheme to cheat plaintiff; that defendant collected from Pumphrey & Company $6,600 as the price of the land, pur-

suant to his agency for plaintiff; of which sum two-thirds, or $4,400, was paid for plaintiff's undivided two-thirds interest in the farm; that defendant accounted to plaintiff for $3,666.66, fraudulently withholding a balance of $733.33, which sum defendant now has and retains; that plaintiff did not know these facts or that defendant had retained said sum out of the proceeds of the land, until long after the deed and contract were delivered; that he made demand of defendant for said sum before the institution of this suit and defendant refused to pay it; that defendant is indebted to plaintiff in the sum of $733.33, for which sum plaintiff asks judgment with interest from March 3, 1903. The case stated is manifestly one for money had and received. The charge of fraud was not preferred in order to state an action in tort, nor the contract between plaintiff and defendant averred in order to declare on it. Those matters were embraced in the pleading merely to lay open to clear view, the transaction out of which accrued defendant's indebtedness to plaintiff for money had and received. In an action on a special contract the plaintiff can recover only on the contract pleaded; not on a different one. [Laclede Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384.] But that rule does not preclude a person for whom money has been collected by another, pursuant to some contract, from recovering what belongs to him in an action for money had and received, merely because he misstates the contract authorizing the defendant to collect. Where the action is by a principal for money had and received by an agent, belonging to the principal, the particulars of the contract giving authority to the agent to act, are certainly not of the essence of the case, even granting they are material, which is doubtful; though it may be very proper to set out the authority of the agent in order that the transaction in which the agent received the money may appear from the pleadings. An action

like this lies in lieu of one on a contract whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by ties of natural justice and equity, to refund. Such was the effect of Lord Mansfield's opinion in Moses v. Macferlan, 2 Burr. 1005, wherein it was further said: "This species of assumpsit (for money had and received to the plaintiff's use) lies in numberless instances, for money the defendant has received from a third person, which he claims title to, in opposition to the plaintiff's right; and which he had, by law, authority to receive from such third person." [See, too, Curtis v. Curtis, 3 How. 246; Winningham v. Fancher, 52 Mo. App. 458, 462; Mansur v. Botts, 80 Mo. 651.] And again it has been said by an eminent court, that no privity of contract between the parties other than is created by law, is necessary for the maintenance of the action, and, further:

"It seems to have been well settled heretofore that if A promises B, for a valuable consideration, to pay to C, the latter may maintain assumpsit for the money. It is so laid down in many of the authorities cited by the plaintiff's counsel; and it is stated in Lord C. B. Comyns' Digest, Assumpsit E, that if money be given to A, to deliver to B, B may have the action; and Roll. Abr. and Hard. Rep. are cited in support of the position.

"The principle of this doctrine is reasonable, and consistent with the character of the action of assumpsit for money had and received. There are many cases in which that action is supported without any privity between the parties other than what is created by law. Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has legal or

equitable ground for retaining it, the law creates the privity and the promise." [Hall v. Marston, 17 Mass. 574, 579.]

In an instruction requested by defendant the court below treated the case as one on a special contract and therein erred, in our judgment, in favor of defendant.

3. Having determined the character of the action, we will consider the effect of our conclusion on defendant's contention that the judgment should be reversed because the jury returned a verdict for less than the evidence showed plaintiff was entitled to recover. In support of this assignment we are cited to Cole v. Armour, 154 Mo. 333, wherein it was held in a suit on an express contract, by which the plaintiff was entitled to recover a certain sum or nothing, that a verdict for less than the plaintiff appeared, from all the evidence, to be entitled to, could not stand even though not complained of by him, but only by his adversary. The reasoning of the opinion shows this ruling was put on the ground that the verdict proved the jury did not believe the testimony going to establish the alleged contract; "for if they had, the verdict would necessarily have been for the full amount claimed," said the court, and, further, that the verdict was not responsive to the issues. As this is not an action on an express contract, but one for money had and received, and as there can be no doubt about the facts on which defendant's liability depends, we consider the above cited case no authority for the proposition that the judgment ought to be reversed on defendant's appeal, because the jury awarded plaintiff less damages than they should have given. And this is the more true in view of the fact that defendant introduced certain evidence for the obvious purpose of reducing the amount of the recovery; namely, testimony to show the defendant paid Locke a commission for assisting in selling the land to Pumphrey. This

evidence was irrelevant; but defendant ought not to be heard to complain if it influenced the jury to reduce plaintiff's recovery below what it ought to have been.

Some other points are made in appellant's brief, but as we think they possess no merit, they will not be discussed. The judgment was for the right party and will be affirmed. All concur.