## O. L. HOUTS, Respondent, v. HARVEY G. DUNHAM, Administrator, Appellant.

### St. Louis Court of Appeals, January 9, 1912.

1. **ACTION: Form of Action: Code Provisions.** Under section 1727, Revised Statutes 1909, there is but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs; and by this and other provisions of the Code, the nice distinctions between common law forms of action have been abolished, and their substance alone remains.

2. **MONEY HAD AND RECEIVED: Nature of Action.** The action for money had and received is of equitable origin, proceeding from the maxim, *ex aequo et bono,* to the end of affording a remedy for the recovery of money in the possession of one, when, in good conscience, it belongs to another; and because of this, it is favored in the law, and the tendency is to widen its scope.

3. ————: **Express Promise to Pay.** In an action for money had and received, a broader right to proceed and recover exists where the action is predicated on an express promise to pay, than where the promise is merely implied.

4. ————: **Recovery on Quantum Meruit: Attorney and Client: Promise to Divide Fee with Associate Counsel.** While, generally, to sustain an action for money had and received, plaintiff must show that defendant has received a specific sum for his use, yet where, after a recovery in a cause, one attorney was paid the fee, under an express agreement with the client that he would pay his associate counsel such part thereof as the latter's services were reasonably worth, he was estopped to

deny the right of such associate counsel to proceed against him to recover the reasonable value of the services; and hence an action for money had and received was a proper method of redress, where the question as to the reasonable value of the services was fully and fairly submitted to the jury.

5. **EVIDENCE: Self-Serving Statements: Res Gestae.**  Where, in an action for money had and received, brought by one attorney against another to whom had been paid a fee in which plaintiff was entitled to share, the answer alleged the mailing of a check for $500 in full satisfaction, which had been retained and appropriated to plaintiff's use, letters of plaintiff, showing a refusal to accept the check, and stating that his services were worth more, were admissible, along with the uncashed check and letters of defendant, urging its acceptance, as part of the *res gestae*, to show that the check was not appropriated and that there had been no accord and satisfaction.

6. **ATTORNEY AND CLIENT: Evidence: Contingent Fee: Evidence as to Value.**  Where an attorney makes a specific contract for a contingent fee, the amount of which is not agreed upon, but is to depend entirely upon the fact and amount of recovery, such fee may be recovered in an action on a *quantum meruit*, and it is competent for expert witnesses, in testifying to the reasonable value of such services, in such an action, to take into consideration the element of contingency.

7. **INSTRUCTIONS: Refusal: Not Based on Evidence: Money Had and Received: Attorney and Client.**  Where, in an action for money received from a client by an attorney, in payment of his associate counsel's fee, there was no evidence that defendant was entitled to determine the amount of his associate's fee, an instruction submitting the question of such an agreement was properly refused.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds,* Judge.

AFFIRMED.

*Joseph S. Laurie* and *R. P. & C. B. Williams* for appellant.

(1) The court erred in allowing plaintiff to recover upon a theory different from that set forth in the petition. The petition is for money had and received, which action will only lie for a specific sum.

Chitty Contracts, 76 (1890); 1 Chitty Plead., star p. 364; Douglass v. Skinner, 44 Conn. 338; Maxwell v. Longenecke, 82 Ill. 308; Gillman v. Waterville, 59 Me. 491; Van Hoesen v. State Convention, 16 Minn. 96; Glasscock v. Hazel, 109 N. C. 145; Robins v. Ins. Co., 12 Mo. 381; Deal v. Bank, 79 Mo. App. 262; Clark v. Bank, 57 Mo. App. 277; 27 Cyc. 854. (2) The court erred in admitting, in behalf of plaintiff, letters of plaintiff Houts to defendant. Cook v. Prism Co., 93 Ill. App. 299; Duyster v. Crawford, 69 N. J. L. 614; Sargent v. Beard, 53 S. W. 90; Hammond v. Beeson, 112 Mo. 190. (3) Plaintiff's hypothetical question was erroneous and should not have been allowed by the court. (a) Said question was directly contrary to the evidence in many particulars; and supported by no evidence in other particulars. (b) The question omits essential matters. Trimble v. Railroad, 201 Mo. 372. (c) The question is vague and indefinite. (d) It undertakes to base the value of plaintiff's services upon the fact that his fee was contingent. Weeks on Attys., sec. 350, p. 718, n. 8; Walbridge v. Barrettt, 118 Mich. 433; Gilbert v. Fay, 4 App. (D. C.) 38; Robins v. Harvey, 5 Conn. 336. (4) Instructions given in behalf of plaintiff (Nos. 1, 2, 3) are erroneous; and likewise instruction given by the court of its own motion. Herndon v. Lammers, 56 S. W. 314. (5) The court erred in refusing instructions Nos. 1, 2, 3, 5, 10 and 13 prayed by defendant. (a) Instruction No. 13. Gas Co. v. Supply Co., 71 Kas. 464; Gas Co. v. Johnson, 123 Pa. St. 576. (6) The court erred in not setting aside the verdict and granting a new trial, for the reason that the verdict was not supported by any evidence; was in direct conflict with the instructions of the court; and was contrary to all the evidence. (7) The verdict was excessive and should not have been allowed to stand.

*Jones, Jones, Hocker & Davis* and *Chas. E. Morrow* for respondent.

(1) An action for money had and received lies wherever one has received money which in equity and good conscience belongs to another, whether received under a contract or as trustee; those are matters of inducement, the gravamen of the action being, has defendant received money belonging to plaintiff? If so, how much? Banking Co. v. Com. Co., 195 Mo. 288; Crigler v. Duncan, 121 Mo. App. 381; Jenkins v. Clopton, 141 Mo. App. 75; State ex rel. Jackson v. Bradley, 193 Mo. 45. (2) In an action for money had and received, the petition may allege contract of employment and receipt of specific amount or receipt of a fund as trustee, out of which fund plaintiff is entitled to the reasonable value of his services, or both, and these facts will be taken as mere matters of inducement and the gravamen of the action will be "Has defendant received money to which plaintiff in justice and equity is entitled? If so, how much?" Banking Co. v. Com. Co., 195 Mo. 288; Crigler v. Duncan, 121 Mo. App. 381; Jenkins v. Clopton, 141 Mo. App. 25. (3) The court committed no error in admitting letters of plaintiff, because in answer to defendant's letters introduced without objection, and because each discussed the check offered, refused to accept it as full payment and asked and argued for right and permission to cash, and yet stated would not cash except by permission, they are specifically held competent. Mfg. Co. v. Heinz, 120 Mo. App. 465. (4) If a specific contract for a contingent fee is made, but amount not agreed upon, it may be sued for on a *quantum meruit,* and evidence by experts as to reasonable value of services, taking into consideration the element of contingency, is admissible. Ellis v. Woodburn, 89 Cal. 129; 3 Am. & Eng. Enc. (1 Ed.), pp. 420-1-2-3; Smith v. Couch, 117 Mo. App. 267; Frink v. McComb, 60 Fed.

486. (5) Plaintiff's hypothetical question was not erroneous; it was fully supported by the evidence, omitted no essential matter, was not vague or indefinite; and did not base value of plaintiff's services upon the fact that his fee was contingent, although it had a right to do so as the evidence fully supported this fact and no specific objection was made thereto or exception saved thereon. Arthur v. Cochran, 208 Mo. 314; Longan v. Weltner, 180 Mo. 340; O'Neil v. Kansas City, 178 Mo. 99.

NORTONI, J.—This is a suit for money had and received. Plaintiff recovered and defendant prosecutes the appeal. The action was instituted and judgment given against George P. B. Jackson as defendant in his lifetime. Since the appeal was perfected, Mr. Jackson departed this life and the cause has been revived and now proceeds against his administrator, Harvey G. Dunham. Plaintiff is a member of the bar, engaged in the practice of his profession at Warrensburg, Missouri, and during his lifetime Mr. Jackson was a member of the bar engaged in the practice of law, first at Sedalia and afterward in St. Louis. About 1891, the mercantile firm of Minter Brothers at Sedalia employed George P. B. Jackson, Esq., as their attorney to prosecute a suit for them on a libel against the Bradstreet Commercial Agency and he instituted the suit in the circuit court of Pettis county at Sedalia. Soon after the suit was instituted, defendant therein, the Bradstreet Commercial Agency, procured a change of venue and the cause was transferred to the circuit court of Johnson county at Warrensburg for trial. Thereupon, Mr. Jackson communicated to plaintiff that he desired to engage his services as co-counsel for plaintiff Minter Brothers in that case. Plaintiff signified his willingness to accept employment in that behalf and was informed by Mr. Jack-

son that his compensation would depend upon the fact and the amount of recovery, or, in other words, the fee would be a contingent one. In this plaintiff acquiesced, and entered upon the discharge of the duties of his employment as co-counsel in the case.

A few months thereafter, but before the trial, Mr. Jackson employed as well Mr. Suddath, another prominent member of the Warrensburg bar, as co-counsel in the case, and it seems this employment was had, too, under a like arrangement as that with plaintiff, Mr. Houts. In December, 1893, a trial of the libel suit, which consumed five days, was had in the circuit court at Warrensburg and resulted in a verdict for plaintiff, Minter Brothers, for $30,000. At this trial, plaintiff, Mr. Houts, and Mr. Suddath assisted throughout and performed what appears to have been highly satisfactory services. A motion for a new trial was filed by defendant thereafter and sustained by the court. The case was then continued from term to term for a number of years until the February term, 1898 when a second trial was had, which resulted in a verdict of $27,000 in favor of plaintiffs therein, Minter Brothers. Both plaintiff, Mr. Houts, and Mr. Suddath participated in this trial as well, and it appears that they looked after the matters of motions for costs, continuances, etc., during the several years the cause was pending and while Mr. Jackson was in St. Louis. An appeal was perfected in the case to the Supreme Court and, though Mr. Jackson prepared the brief and argued the case on appeal, it appears he submitted the brief to his co-counsel at Warrensburg for their approval. The judgment of $27,000 recovered in the second trial of the libel suit was affirmed by the Supreme Court, and it appears that in the meantime Mr. Jackson took an assignment of the judgment from Minter Brothers for the purpose of paying himself, plaintiff and Mr. Suddath ahead of other creditors who might garnish the same. The evidence is

conclusive that the judgment was assigned by Minter
Brothers to Mr. Jackson in trust for the purpose
stated. Indeed, Mr. Jackson so stated the fact to be.
After its affirmance in the Supreme Court, the Brad-
street Commercial Agency, defendant in the libel suit,
paid to Mr. Jackson the full amount of the judgment
and interest thereon, to-wit, $35,595. After having
collected this amount, Mr. Jackson notified his clients,
the Minter Brothers, to call at his office for a settle-
ment, and this they did. Though it apears Mr. Jack-
son had been paid a small retainer prior to the insti-
tution of the suit, his compensation thereafter was to
be contingent on the amount and the fact of recovery
in the libel suit. After deducting some expenses per-
taining to the litigation, Mr. Jackson turned over to
Minter Brothers $16,000 and retained, under an agree-
ment with them, $16,745 of the amount of the judgment
for himself and co-counsel. According to the evidence
of Mr. Jackson, his agreement with Minter Brothers
then made was to the effect that he should pay plain-
tiff $500 and Mr. Suddath $500 for their services and
retain the balance of $15,745 as compensation for his
own services. But the proof for plaintiff touching this
matter which consists of the evidence of the two Min-
ters goes to the effect that no definite amount was
settled upon at the time as compensation for plaintiff
and Mr. Suddath. The Minters gave testimony tend-
ing to prove that Mr. Jackson retained $16,745 of the
proceeds of the judgment as compensation to himself
and his co-counsel, this plaintiff and Mr. Suddath, and
that nothing whatever was said concerning the par-
ticular amount any one of the attorneys should re-
ceive. Immediately after having settled with Minter
Brothers and accepting the trust with respect to this
fund of $16,745 for the payment of counsel, Mr. Jack-
son wrote plaintiff, as he did also Mr. Suddath, and
inclosed to each his check on the Merchants-Laclede
National Bank of St. Louis for $500 in payment for

their services. Plaintiff and Mr. Suddath forthwith
wrote Mr. Jackson a joint letter to the effect that
they had each received his check for $500 and did not
fully understand the matter; that if it were intended
in full settlement for their services, they each declined
the proffer, but if only on account, they would so treat
it. A few days thereafter Mr. Jackson wrote both
plaintiff and Suddath that the checks so forwarded to
each were intended to be in full payment for their
services in the cause. Several letters passed betwen
the parties concerning this matter, through all of
which it appears both plaintiff and Mr. Suddath de-
clined to accept the checks tendered, and they were
never cashed. Mr. Jackson refused to permit the par-
ties to cash them as on account and they refused to
accept them as full compensation. Plaintiff, insist-
ing that he is entitled to reasonable compensation for
his services, instituted this suit for money had and
received against Mr. Jackson, on the theory of a prom-
ise made by Jackson to Minter Brothers, which inures
to his benefit.

Throughout the case it appears that Mr. Jackson
did not become personally responsible to either plain-
tiff or Mr. Suddath at the time of their employment,
for though he negotiated the employment, he did so
expressly on behalf of his client, Minter Brothers, with
an understanding that the compensation should be
wholly contingent upon the fact and amount of re-
covery. In no sense does the suit proceed as though
Jackson became responsible personally to plaintiff in
the first instance but instead it is averred in the peti-
tion that the employment of plaintiff was through
Jackson, acting for Minter Brothers. Though the pe-
tition proceeds against Jackson as for money had and
received, in accordance with the facts and under the
circumstances above stated, it proceeds, too, for a re-
covery as on *quantum meruit* for the reasonable value
of plaintiff's services in and about the cause of Min-

ter Brothers, which is alleged to be the sum of $4,186.25, or one-fourth of the amount which Mr. Jackson retained as compensation for himself and co-counsel, and for this amount recovery was had. Because of this element of *quantum meruit* so introduced in this case for money had and received against Mr. Jackson, it is earnestly argued the judgment should be reversed. That Mr. Jackson became a trustee for the benefit of plaintiff and Mr. Suddath under the arrangement whereby he accepted the sum of $16,745 for the purpose of compensating himself and co-counsel is conceded. But the extent or amount to which plaintiff and Mr. Suddath should participate in this trust fund is by no means agreed to, for according to the evidence of Jackson, their interest consisted of $500 each, while according to the evidence of the Minters, no amount whatever was fixed touching that matter. Of course, under the original contract of employment made through Jackson for Minter Brothers, both plaintiff and Suddath are entitled to reasonable compensation for their services rendered.

That an action for money had and received will lie against Jackson on his agreement with Minter Brothers under which he retained $16,745 for the purpose of compensating himself and co-counsel, no one can doubt, provided a definite and determinate sum of that fund was by agreement of the parties set apart to each. In such circumstances, the case would amount to no more than the usual one where a promise made by one party, as A to another, B, for the benefit of a third, C, is declared upon and enforced according to its express terms. Such are the cases of Hall v. Marston, 17 Mass. 574; Deal v. Mississippi County Bank, 79 Mo. App. 262. But here the facts reveal a more difficult problem, indeed, as appears from the theory of plaintiff's case and the proof in his behalf, for no definite or determinate sum to which he was entitled was agreed upon and determined by Minter Brothers

and Jackson when the trust was settled and Jackson
charged with the duty of executing it. As before said,
the suit proceeds for money had and received but it
carries with it an element of *quantum meruit* as well,
while the authorities declare the general rule to be
that in order to sustain the action of money had and
received plaintiff must show that defendant has re-
ceived some specific sum for his use. [See Chitty on
Contracts (12 Ed.), 76, 77; Chitty on Pleadings (16
Ed.), 364; see also Douglass v. Skinner, 44 Conn. 338;
Maxwell v. Longenecker, 82 Ill. 308; Glasscock v. Ha-
zell, 109 N. C. 145.] A standard, modern work thus
expresses the rule: "As appears from the numerous
decisions on the subject, in order to sustain an action
for money had and received, plaintiff's claim must be
for a determinate amount, unless in those cases in
which defendant has expressly promised to pay a par-
ticular sum." [See 27 Cyc. 854, 855.] Because of
this, it is argued the judgment should be reversed, for
the reason that though the petition is for money had
and received the court submitted the issue *quantum*
*meruit* to the jury. Of this it may be said that the
issue on *quantum meruit* is tendered by the petition,
for it in express terms claims a recovery for so much
as the services of plaintiff were reasonably worth. The
issue touching, and the recovery for, the reasonable
value of plaintiff's services was, therefore, not ex-
traneous to the petition though it may in some degree
infringe upon the general and ancient rule above stated,
pertaining to the action of money had and received.
However, under Sec. 1727, R. S. 1909 of our code, there
is but one form of action for the enforcement or pro-
tection of private rights and the redress or preven-
tion of private wrongs. By this and other provisions
of the code, the nice distinctions between the common
law forms of action have been abolished and their
substance alone remains. [See Huston v. Tyler, 140
Mo. 252, 263, 36 S. W. 654, 41 S. W. 795.] Obviously,

it is the duty of the court to shape and mould this substance in accordance with the equitable principles reflected throughout the code, so that the ends of justice shall prevail and the spirit which giveth life be not impaired through an adherence to the cold letter of ancient technical rules. Moreover, the action of money had and received is of equitable origin, proceeding from the maxim *ex aequo et bono,* to the end of affording a remedy for the recovery of money in the possession of one which in good conscience belongs to another. Because of this, the action is favored in the law and it is said the tendency is to widen its scope, for it is recognized to be a flexible form of procedure commingling and administering equitable doctrines as well as those of the law. [See Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, 288, 94 S. W. 527; Crigler v. Duncan, 121 Mo. App. 381, 99 S. W. 61; Jenkins v. Clopton, 141 Mo. App. 74, 121 S. W. 759; Moses v. McFerlan, 2 Burr. 1005.]

On viewing the matter here in judgment precisely as it is, it appears Jackson voluntarily assumed the office of trustee and received from Minter Brothers the fund of $16,745 under an express agreement to account to plaintiff for so much thereof as the services rendered by him to Minter Brothers in and about the Bradstreet litigation were reasonably worth. Of the subject-matter, Mr. Jackson was fully advised, for he himself had employed plaintiff for Minter Brothers under a contract through which the compensation depended entirely upon the fact and amount of recovery. Further, Jackson personally knew the amount and value of plaintiff's services, for as attorneys, they labored throughout together. Having thus voluntarily assumed the obligation mentioned and made the express promise to Minter Brothers for the benefit of plaintiff, Jackson should be estopped, on the principles of natural justice alone, from denying plaintiff's right to proceed against him as for money had

and received to his use to the amount of the reasonable value of such services. Where an express promise to pay appears, the authorities seem to recognize a valid distinction touching a broader right to proceed and recover in this form of action than where the promise is merely implied or raised by the law, and this broader right arises from such express promise alone; at least, this is the thought we glean therefrom. [See 27 Cyc. 854, 855; Collins v. Phelps, 3 Day (Conn.) 506.] It would seem to be a just doctrine, for no one is injured by being required to answer according to the full measure of his express promise. That money had and received is a proper form of proceeding on the facts in judgment here, if the amount involved were a determinate one, is not to be questioned and we discern no just principle which should preclude plaintiff from enforcing the express agreement made by Jackson with Minter Brothers for his benefit. As developed on the trial and found by the jury, this agreement was that defendant would account to plaintiff for the reasonable value of his services to Minter Brothers and in the particular circumstances of the case we believe the proceeding and course pursued to obtain relief a proper one. It certainly comports with the precepts of natural justice and good conscience and entails no result upon defendant other than that which he voluntarily assumed by his express agreement. The matter of the reasonable value of plaintiff's services to Minter Brothers was fully and fairly submitted to the jury by instructions given for both plaintiff and defendant, and the jury were expressly directed that no liability· could be enforced against defendant Jackson except for the reasonable value of plaintiff's services rendered to Minter Brothers, the client of both.

In his answer, defendant pleaded that he had mailed to plaintiff a check for $500 in full satisfaction for his services and that plaintiff had retained and

appropriated the check to his own use. At the trial, plaintiff introduced defendant's letter and also the check, which had never been cashed, in evidence and introduced as well a letter signed by himself and Mr. Suddath declining to accept the checks in full satisfaction. Several letters passed between the parties touching this matter. The letters of defendant to plaintiff urged that the check should be received in full satisfaction for plaintiff's services and that such was a reasonable compensation therefor, while the letters of plaintiff to defendant touching the same matter each insisted that the check would not be accepted in full satisfaction and that plaintiff's services were worth much more than that amount. These letters reveal that each side argued therein in support of his position. No objection was made by defendant to those letters written by him to plaintiff, but objections were made to receiving in evidence all of the letters written by plaintiff to defendant in answer thereto. It is argued the court erred in admitting these several letters of plaintiff in evidence, but we are not so persuaded. The letters of plaintiff when introduced together with those of defendant were entirely competent as tending to prove he had not appropriated the check to his own use and that no accord and satisfaction obtained in the case. The entire correspondence was introduced *seriatim* and it pertained to the *res gestae* of an affirmative defense pleaded in the answer, for it tended to and did disprove such defense. It was proper that all of these letters between the parties touching the forwarding of the check and plaintiff's rejection thereof should go to the jury in order that all might be considered in determining as to whether or not plaintiff had appropriated the check to his own use as alleged in defendant's answer. [See Hammond v. Beeson, 112 Mo. 190, 201, 20 S. W. 474.]

A considerable portion of defendant's brief is devoted to plaintiff's hypothetical question. It is a

long one and seems to have been carefully prepared. We will not incumber the opinion by setting it out here but dismiss the matter by saying that after carefully considering all of the arguments directed against it, we regard none of them as possessing sufficient merit to operate a reversal of the judgment. Under this question, expert witnesses for plaintiff, in expressing an opinion as to the reasonable value of plaintiff's services to Minter Brothers and the amount he should recover, took into consideration the fact of the amount of the recovery and the further matter that plaintiff's fee was contingent upon the fact and amount of the recovery. It is earnestly argued that this was error, for it is said the mere fact that plaintiff's fee was contingent in and of itself reflects no light whatever upon the reasonable value of the services he performed. In accordance with the rules of strict logic, such may be true but certainly plaintiff was entitled to the benefit of the express agreement made between himself and Mr. Jackson for Minter Brothers at the time of his employment. By the very terms of this agreement as testified to by both plaintiff and Jackson, plaintiff's compensation was to depend upon the fact and amount of the recovery. It was to be determined by reference thereto. No one can doubt, for it is a matter of common knowledge, that attorneys usually receive larger fees when they are so contingent than when positively agreed upon. The authorities declare that if a specific contract for a contingent fee is made and the amount of such fee is not agreed upon but is to depend entirely upon the fact and the amount of the recovery, such fee may be sued for on a *quantum meruit* and it is competent for the expert witnesses in giving the reasonable value of such services to take into consideration the element of contingency. In the circumstances of such a contract, we regard the matter of the contingency of the fee as a just and proper element for consideration.

[See 3 Am. & Eng. Ency. Law (2 Ed.), 420, 421, 422, 423.] The authority cited says: "It is a recognized rule that an attorney may properly charge a much larger fee when it is to be contingent than when it is not so." [See, also, Ellis v. Woodburn, 89 Cal. 129; Smith v. Couch, 117 Mo. App. 267, 272, 92 S. W. 1143; Frink v. M'Comb, 60 Fed. 486, 490.]

Among others, defendant requested and the court refused defendant's instruction No. 2 as follows: "If you believe from the evidence that the terms of the employment of the plaintiff agreed upon between him and the defendant as the agent of Minter Bros. were that the compensation of the plaintiff, in the case of Minter Bros. v. Bradstreet, should be determined by this defendant at the conclusion of said case of Minter Bros. v. Bradstreet, and that at the time of settling with Minter Bros., this defendant did fix plaintiff's compensation in the aforesaid case at $500 and secured that amount from Minter Bros. for plaintiff, then plaintiff is not entitled to recover anything in addition to said sum of $500 in this case." It is argued the court should have given this instruction as it was competent for Mr. Jackson and plaintiff to make an express agreement that Mr. Jackson should determine the amount of plaintiff's fee. Though such be sound doctrine, the court was justified in refusing this instruction if the evidence did not warrant it. The instruction requested hypothesizes the facts as though it appeared plaintiff agreed that his fee "should be determined" by Mr. Jackson. We find no evidence to the effect that plaintiff agreed Mr. Jackson should "determine" his fee. What Mr. Jackson said at the time of the employment to Mr. Houts was, "If you want a fee now, I will get it. If you want to wait and take a chance of being able to get a better fee, then you can do that—just as you please," and Mr. Houts thereupon agreed to wait until the litigation had concluded, which was twelve years thereafter. Further-

more, it appears from a letter from Mr. Jackson to Mr. Houts that Jackson did not understand the arrangement as hypothesized in this instruction. In this letter, Mr. Jackson explains to Mr. Houts that, at the time of the settlement with Minter Brothers when he accepted the $16,745 for himself and other counsel, he provided in such settlement that Mr. Houts and Mr. Suddath were to have $500 each for their services. Concerning this, Mr. Jackson wrote, "Of course, I did not have any right to conclude you as to the demand you may make against the Minter Brothers for your services but I have given you the circumstances of the settlement that was made." From this it appears that Mr. Jackson did not understand that he had authority to determine plaintiff's fee, for he expressly disclaims it and upon carefully scrutinizing the evidence given by him at the trial, it is entirely clear that he did not so testify. Such being the state of the proof, the court very properly refused the instruction above copied.

Though we will not prolong the opinion by discussing all of the arguments advanced for a reversal of the judgment, it may be said they have all been fully considered and we believe the case was fairly tried without reversible error. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.