THOMAS F. EARLY, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, July 19, 1912.    Motion for Rehearing Overruled October 15, 1912.

1. MONEY HAD AND RECEIVED: Nature of Action. The action for money had and received is of equitable origin, proceeding from the maxim, *ex aequo et bono*, to the end of affording a remedy for the recovery of money in the possession of one, when, in good conscience, it belongs to another; and because of this it is favored in the law, and the tendency is to widen its scope.

2. ————: When Action Lies: No Privity of Contract. Where one person wrongfully obtains and retains possession of money belonging to another, under such circumstances that, in equity and good conscience, it should be paid to the latter, the law implies a promise to do so, and an action for money had and received will lie, regardless of the lack of privity of contract between the parties.

3. ————: Pleading: Petition Construed: Fraud and Deceit. Plaintiff, who had done certain railroad construction work under a subcontract, but who had no contract with defendant railroad company, in making a final settlement with the principal contractor, deducted from the amount due him a certain amount which had been paid by defendant as damages, under an agreement with defendant that if, upon investigation, it was revealed that plaintiff's neglect did not cause the damage, defendant would pay him the amount so deducted. The amount of the deduction was paid to defendant by the contractor, and,

after plaintiff had presented affidavits to defendant showing that his neglect did not cause the damage and defendant had refused to return to him the amount deducted, he brought suit to recover it. The petition set out the foregoing facts, and further averred that defendant came into and retained possession of a specified amount of plaintiff's means by and through certain false and fraudulent representations with respect to the fact that his neglect caused the damage. *Held*, that the petition did not seek a recovery on the ground of fraud and deceit, but sought a recovery for money had and received; the fraudulent representations being important to plaintiff's right of recovery, however, to the end of raising the implied promise available in the action for money had and received.

4. ————: **Sufficiency of Evidence: Facts Stated.** Plaintiff, who had done certain railroad construction work under a subcontract, but who had no contract with defendant railroad company, in making a final settlement with the principal contractor, deducted from the amount due him a certain amount which had been paid by defendant as damages, under an agreement with defendant that if, upon investigation, it was revealed that plaintiff's neglect did not cause the damage, defendant would pay him the amount so deducted. The amount of the deduction was paid to defendant by the contractor, and, after plaintiff had presented affidavits to defendant showing that his neglect did not cause the damage and defendant had refused to return to him the amount deducted, he brought suit for money had and received. The evidence for plaintiff tended to show that the damage was not caused by his neglect and that the agent of defendant who made the agreement to refund was in possession of information of this fact at the time he made the agreement. *Held*, that the case was one for the jury.

5. **MECHANICS' LIENS: Waiver: Subcontractor.** The right to enforce a mechanic's lien may be waived by contract, and hence a subcontractor, whose contract with the principal contractor adopted a provision of the latter's contract with the owner by which he waived his right to a mechanic's lien, waived his right to such a lien.

6. **MONEY HAD AND RECEIVED: Petition: Surplusage: Mechanics' Liens.** In an action against a railroad company by a subcontractor, for money had and received, where it appeared that plaintiff, by his contract with the principal contractor, had waived his right to a mechanic's lien, averments in the petition, that plaintiff was caused to forego his right to enforce such a lien by reason of the false and fraudulent representations of defendant's agent, were immaterial, and plaintiff, upon proving the facts necessary to maintain the action for money had and received, was entitled to recover.

7. ————: **Fraud and Deceit: Burden of Proof.** In an action for money had and received, where the right of recovery is based on defendant's alleged false and fraudulent representations, the burden of proving the falsity of such representations rests on plaintiff.

8. **FRAUD AND DECEIT: Presumptions: Burden of Proof.** In all cases not involving transactions between persons occupying fiduciary or confidential relations with each other, where the right to relief is based upon the alleged commission of a fraud, the presumption is in favor of the fairness of the transaction and the innocence of the person accused, and because of this, the burden of establishing the fraud rests upon the person asserting it.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

REVERSED AND REMANDED.

*Thomas R. Morrow, L. F. Cottey, John H. Lathrop,* and *James P. Gilmore* for appellant.

(1) . Upon the entire record, plaintiff is not entitled to recover. (a) No fraud or deceit was perpetrated on Cook & Devine, but they acted on their own responsibility, and plaintiff cannot recover on account thereof. Anderson v. McPike, 88 Mo. 292; Edwards v. Noel, 88 Mo. App. 439; Warren v. Ritchie, 128 Mo. 311; Bryan v. Hitchock, 43 Mo. 527; Dean v. Whire, 63 Mo. 186; Champion, etc., v. Heskett, 125 Mo. App. 516; Morse v. Rathburn, 49 Mo. 93; Priest v. White, 89 Mo. 609; Woods v. Letton, 111 Mo. App. 51. (b) Plaintiff had no right to a lien and cannot, therefore, recover on account of the loss thereof, nor make the same the basis of fraudulent representations. 20 Am. & Eng. Ency. Law (2 Ed.) 493; 27 Cyc. 261; Pressed Brick Co. v. Barr, 76 Mo. 380; Keller v. Insurance Co., 95 Mo. 627; Pinning v. Skipper, 71 Md. 347; Hughes v. Lansing, 34 Ore. 118; Waters v. Wolfe, 162 Penn. St. 815; Dwyer v. Manufacturing Co.,

14 Utah, 339; Gray v. Jones, 47 Ore. 124; Bank v. Power Co., 126 Wis. 370; Loan Ass'n v. Jackson, 163 Pa. St. 208; Schroeder v. Galland, 134 Pa. St. 239; Ballman v. Horn, 160 Pa. St. 377; Edwards v. Noel, 88 Mo. App. 434; Thompson v. Newell, 118 Mo. App. 405; Lenox v. Harrison, 88 Mo. 496; Crumb v. Wright, 97 Mo. 18; Live Stock Remedy Co. v. White, 90 Mo. App. 498; 6 Ency. Law, 742. (c) Plaintiff failed to show any authority to make the alleged representation in the agents and servants of defendant. Milton v. Railroad, 193 Mo. 46; Insurance Co. v. Kuhlman, 6 Mo. App. 522. (d) Defendant in billing against Cook & Devine, did what it had a right to do, and no fraud can be predicated thereon. Barr v. Cubbage, 52 Mo. 414. (e) The evidence from every viewpoint fails to prove any fraud whatsoever. Authorities under point I; Kirkpatrick v. Wiley, 197 Mo. 123; Waddingham v. Loker, 44 Mo. 123; Priest v. Way, 87 Mo. 16; Ridge v. Greenwell, 53 Mo. App. 479; Thrasher v. Greene Co., 103 Mo. 1; Robinson v. Dryden, 118 Mo. 535; Dallam v. Renshaw, 26 Mo. 533; Rumboles v. Parr, 51 Mo. 592; Henderson v. Henderson, 55 Mo. 534; Webb v. Darby, 94 Mo. 621; Funkhouser v. Lay, 78 Mo. 458; Chapman v. McIlwrath, 77 Mo. 38. (2) The court erred in giving plaintiff's instruction numbered 1. 6 Ency. Ev. 6; 6 Ency. Ev. 67; Muenks v. Bunch, 90 Mo. 500; Nauman v. Oberle, 90 Mo. 666; Priest v. Way, 87 Mo. 16; Parette v. Rebenack, 81 Mo. App. 494; Edwards v. Noel, 88 Mo. App. 434; Woods v. Letton, 111 Mo. App. 51; Dwyer v. Bassett, 1 Tex. Civ. App. 513; Mosher v. Post, 89 Wis. 602.

*F. H. McCullough* for respondent.

(1) This is an action for money fraudulently had and received, obtained and retained by defendant, of the money of plaintiff, and it is a well-estab-

lished principle of law, that it can make no difference whether the acts of defendant's servants and agents in making the false representations by which defendant obtained the money was authorized or not. A principal, by keeping the fruits of an unauthorized act of his agent, after knowledge of the fact, ratifies the act and makes it his own. Davis v. Crum, 12 Mo. App. 287; Norton v. Bull, 43 Mo. 113; Watson v. Biglow, 47 Mo. 413; Bank v. Lumber Co., 54 Mo. App. 332; Fahy v. Grocer Co., 57 Mo. App. 77. (2) Where a person receives or retains money, which of right belongs to another, the latter may maintain an action therefor as for money had and received, and to maintain such action it is not essential to show privity of contract. It does not relieve defendant, because they had no contract with plaintiff. Defendant obtained plaintiff's money and it was not due to it. Deal v. Bank, 79 Mo. App. 262; York v. Bank, 105 Mo. App. 137; Richardson v. Drug Co., 92 Mo. App. 515.

NORTONI, J.—This is a suit for money had and received. Plaintiff recovered and defendant prosecutes the appeal. The theory declared upon and pursued is to the effect that defendant obtained possession of $100, money of plaintiff, through and by means of certain false and fraudulent representations and under such circumstances as affords a promise, by implication of law, to pay the same to plaintiff on demand.

It appears defendant was engaged in reconstructing its railroad dump, and let a considerable portion of the work to Cook & Devine by virtue of a written contract in evidence. This contract authorized a subletting of the work by Cook & Devine, and they in turn let a portion of the grading to plaintiff Thomas F. Early, under a written contract, which is also in evidence. In both of these contracts—that is, the con-

tract between defendant and Cook & Devine, original
contractors, and between Cook & Devine and plain-
tiff, sub-contractor—it was stipulated that, in event
defendant railroad company should be required to pay
or compensate any claim asserted against it, which ac-
crued on account of the negligence of such contractor,
the railroad company should deduct the same from
the amount to be paid to such contractor for the work
done.   But though such agreement is contained in
both contracts, defendant railroad company was au-
thorized to make such deductions only from the
amount due the original contractors, Cook & Devine,
and it was for them to assert the right against plain-
tiff, subcontractor, under a like provision in their con-
tract with him.

Some one made an opening in the fence inclosing
the railroad right of way immediately adjacent to that
portion of the work included in plaintiff's contract,
and a horse owned by one Wilson passed through and
came to his death by means of a collision with de-
fendant's train. It seems the horse was killed about
January 26, 1908. On March 31 of that year, plain-
tiff had completed the work undertaken under his con-
tract, and the final payment due him thereon was es-
timated by the engineer to be $558.56. Under the con-
tract, it was the duty of defendant to settle with Cook
& Devine, the original contractors, for work done, and
it was for them in turn to settle with plaintiff sub-
contractor. Defendant refused to settle with Cook &
Devine on the last estimate made March 31, 1908, of
$558.56, until there was first deducted therefrom the
amount of $100, which it was required to pay for Wil-
son's horse killed upon its tracks. Under date of
April 20, defendant's engineer in charge wrote the
contractors the following letter, asserting the claim
of $100 against plaintiff Early:

"Claim of $100 v. Subcontractor Early, April 20, 1908.

"Messrs. Cook and Devine,

"Junction City, Kansas.

"Gentlemen:—Our company has paid a claim of $100 for settlement of stock claim No. 35634 favor of Wm. Wilson of Hurdland, Mo., which we are positive should be paid by Mr. Early as the animal gained access to the track through a gap in our fence made by Mr. Early and his employees. We, of course, have no contract with them, and we have to make bill against you. I will be pleased to know if you have made full settlement with Mr. Early and can protect in this matter by our making the bill as above outlined.

"Yours truly,

"J. W. Meade, Engineer F. G. D."

Cook & Devine presented this letter to plaintiff and he declined to accede to the deduction of $100 from the amount due him, for the reason, as he asserted, that he was not responsible for the gap in the railroad fence through which the horse entered upon the track. Plaintiff stoutly insisted that the opening in the fence was made by another contractor and that, too, before he came upon the work. It appears that the matter was in dispute between the parties for some time, and, in the interim, defendant's claim agent called upon and interviewed plaintiff thereabout. During this time plaintiff persistently refused to accede to the request of the contractors, Cook & Devine, and permit them to deduct the $100 demand by defendant, but, finally, in the early part of June, defendant's claim agent assured him that if he would make such settlement, defendant would pay to him direct the additional $100 if, on thorough investigation, it was revealed that he was not responsible for the opening in the fence. Plaintiff says that upon this assurance he settled with Cook & Devine on June 18, 1908, for $458.56, in full of all claims against them for

work and labor performed under his contract. Though plaintiff forwarded affidavits by several different parties to defendant to the effect that the gap in the fence was present before he went upon the work and that he was in no way responsible therefor, it nevertheless declined and refused to pay him the remaining $100 due under the final estimate of March 31. After several demands and refusals, plaintiff instituted this suit against defendant for $100, as for money had and received to his use.

Though the petition contains much that is irrelevant to the implied promise raised by the law, it counts, in part, upon the facts above stated, and avers that defendant came into and retained possession of $100 of plaintiff's means, by and through certain false and fraudulent representations with respect to the fact that he caused the opening in the railroad fence and thus occasioned the killing of Wilson's horse, and thereafter induced him to settle with Cook & Devine on a promise that it would pay him the remaining $100 in its hands, if, upon investigation, it appeared that he was not responsible for the gap in the fence.

Manifestly defendant misconceives the theory of the suit and the form of the action, for it earnestly argues that it proceeds entirely as for false and fraudulent representations, and, it is said, the evidence is wholly insufficient to sustain a judgment as for damages accrued on account of fraud and deceit. We are not persuaded to that view, for the suit is obviously one for money had and received. No one can doubt that the action of money had and received is of equitable origin, proceeding from the maxim *ex aequo et bono,* to the end of affording a remedy for the recovery of money in the possession of one which in good conscience belongs to another. Because of this the action is favored in the law and it is said the tendency is to widen its scope, for it is recognized to be a flexible form of procedure commingling and ad-

ministering equitable doctrines as well as those of the law. [Houts v. Dunham, 162 Mo. App. 477, 142 S. W. 806, 809; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262, 288, 94 S. W. 527; Crigler v. Duncan, 121 Mo. App. 381, 99 S. W. 61; Jenkins v. Clopton, 141 Mo. App. 74, 121 S. W. 759; Moses v. Mcferlan, 2 Burr. 1005.]

It is true defendant collected the $100 in a settlement had directly with the original contractors, Cook & Devine, and that, by the terms of its contract with them and the contract of Cook & Devine with plaintiff, such was a proper course to pursue; but, be this as it may, the fact that there is no privity of contract between plaintiff and defendant avails naught in the case, for when it appears that one person has wrongfully obtained and retains possession of money, the property of another, under such circumstances, as suggested, that in equity and good conscience it should be paid to the rightful owner, the law implies a promise to do so, which may be availed of and declared upon in this action. The privity of contract, otherwise absent, and usually essential to authorize a recovery, is thus supplied by the law in accord with the precepts of natural justice, to the end of affording a certain remedy for every wrong. [Deal v. Mississippi Co. Bank, 79 Mo. App. 262; Hall v. Marston, 17 Mass. 574.] In the authority last cited, it is said: "Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has legal or equitable ground for retaining it, the law creates the privity and the promise." [See, also, Crigler v. Duncan, 121 Mo. App. 381, 392, 393, 99 S. W. 61.]

The evidence tends to prove that plaintiff was in no way responsible for the gap in the railroad fence through which Wilson's horse entered upon the track

and came to his death. It tends to prove, too, that defendant was advised of this by the affidavits of several disinterested persons, before its claim agent made the representations that defendant would pay him the amount in dispute, if he would settle with Cook & Devine, when it was ascertained to be true that plaintiff was in no wise responsible for the defective fence. The letter of April 20, 1908, to Cook & Devine, touching this matter, which is above copied, states as a fact that Early was responsible for the gap in the fence. In this letter, defendant, through its engineer in charge of the work, asserts that it had paid $100 to Wilson for the horse which "we are *positive* should be paid by Mr. Early as the animal gained access to the track through a gap in our fence made by Mr. Early and his employees." Every subsequent refusal to pay plaintiff on this ground operated a reassertion of the same representation. These facts and other circumstances in evidence tend to prove that defendant obtained and retained the $100 involved here through false representations made by its civil engineer and its claim agent, for it is said plaintiff relied upon the promise of the latter when he finally released Cook & Devine on June 18 from further indebtedness to him on account of the work. It is entirely clear that the case was for the jury.

The petition avers that plaintiff, subcontractor, was entitled, under the statute, to enforce a lien against defendant railroad for the amount due him, but that he was induced, through the representation of defendant's claim agent, to forego this right until his lien had expired. Considerable stress is laid upon this matter throughout the case. It is argued the suit should fail because it appears plaintiff had waived his lien, but we regard the matter as unimportant to the right of recovery. By an express provision of the contract between defendant and Cook & Devine, the original contractors, their right to enforce

the statutory mechanics' lien against the property of defendant was waived. This contract stipulates for themselves and for each and all of the subcontractors that the work covered by this contract and all money due thereunder shall be free from and not liable to any lien or charge at law or in equity or under the mechanics' lien act of any state, territory or country. By an express provision of the contract between plaintiff and Cook & Devine, all relevant provisions of the contract between defendant and Cook & Devine were made parcel thereof, and plaintiff was furnished a copy of such contract at the time of entering into the contract with Cook & Devine. This court has heretofore said that the right to enforce a mechanics' lien may be waived by contract, as will appear by reference to Sanders' Pressed Brick Co. v. Barr, 76 Mo. App. 380, 385. The authorities generally declare that the right to assert and perfect a mechanic's lien is a privilege which the lienor may exercise or not at his pleasure, and may, therefore, be waived by him, but the intention to waive it must be clear. [See 20 Am. & Eng. Ency. Law (2 Ed.) 493, 494.] It is said that "An agreement between the owner and a person furnishing labor or materials that the latter will not claim or file a lien is a waiver of the right to a lien. And a subcontractor whose contract with the principal contractor contains a stipulation that no lien shall be filed on his account is bound thereby and cannot acquire a lien." [27 Cyc. 263; see, also, Davis v. La Crosse Hospital Assn., 121 Wis. 579.] The express agreement above quoted from the contract of Cook & Devine with defendant was adopted and read into that between plaintiff and the original contractors, and plaintiff's right to a lien was thereby waived. But, as before said, this is wholly immaterial to plaintiff's right of recovery as for money had and received; for, if defendant obtained the $100 due plaintiff through the false and fraudulent representation above re-

ferred to, and it appears, as it does, that he was in no manner responsible for the gap in the fence which occasioned the death of the horse, and that he was induced to settle with Cook & Devine on the promise and further false representation that defendant would pay him the $100, if it appeared that he was not in fault, it is against equity and good conscience for defendant to withhold the money from him.

But the judgment must be reversed because of an erroneous instruction with regard to the burden of proof. As to this, plaintiff requested, and the court gave, the following instruction, No. 1:

"The court instructs the jury that unless the defendant has proved to your satisfaction, by the greater weight of the evidence, that at the time the horse of William Wilson entered into and upon the right of way of defendant and was killed and injured, that plaintiff, his agents, servants and employees tore down the gap in the fence in question and left the said gap down, and that the horse of said Wilson entered into and upon said right of way through said gap, then plaintiff was not liable for the killing and injury of said horse, and on that issue you will find for the plaintiff."

By this instruction the court placed the burden of proof upon defendant to show that plaintiff opened the gap in the fence, when it properly rested with plaintiff. Though the form of the action is not for damages accrued on account of fraud and deceit, the matter of defendant's fraudulent representations is important to plaintiff's right of recovery, for, indeed, the suit predicates thereon, to the end of raising the implied promise available in money had and received. Touching this matter, the burden was on plaintiff beyond question. No one can doubt that in every case, except those involving transactions between persons occupying fiduciary or confidential relations with each other, where the right to relief is based

upon the alleged commission of a fraud, the presumption is in favor of the fairness of the transaction and the innocence of the person accused. Because of this, the burden of proof is upon the party asserting the fraud to establish the same. [See Ency. on Evidence, Vol. 6, p. 6.]

It will be unnecessary to consider plaintiff's second instruction, but, obviously, it contains much which should be omitted, and it is too long to be practical, for the jury may not understand it. Upon another trial, it should be redrawn to conform with the view expressed in this opinion. It will be unnecessary to consider the petition further than to say that, if it is insufficient, it may be amended, provided plaintiff is so advised.

For the error contained in the above instruction, touching the burden of proof, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.